IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW YORK,

IN JULY TERM, 1839, IN THE SIXTY-FOURTH YEAR OF THE INDEPENDENCE OF THE
UNITED STATES.

---

## THE PEOPLE *vs.* SMITH DAVIS.

On an indictment here against a prisoner for *having in his possession, with intent to pass, bank notes,* purporting to have been issued by a banking corporation of a state *other* than that of New York, it is not necessary to show that there is in fact such a corporation in existence; at all events, proof of the most general character of its existence is sufficient.

Where the *direct charge* rests for its proof upon the testimony of *accomplices,* such proof is sufficient to convict, if it be *corroborated by the evidence of credible witnesses,* although such evidence has only an *indirect* tendency to establish the commission of the *particular offence* charged: as where the testimony of the accomplices fixes upon the prisoner the charge of having in his possession counterfeit bills with the intent to pass, and the proof by the unimpeached witnesses shows that the prisoner was possessed of a *press* and *plates* used in making counterfeit impressions of bank bills. The confirmation of the accomplices must, however, be of some fact or facts which go to fix the guilt of the accused.

A witness called to sustain the character of an impeached witness, testifying that he has known him for a number of years, and that he knows his associates, but is not acquainted with his general character for truth and veracity, will be permitted to testify that *he would believe him on his oath.*

INDICTMENT for having *in possession counterfeit bank bills with intent, &c.* The prisoner was indicted for that he on,

&c., at, &c., feloniously had in his custody and possession, and did receive from some person or persons to the jurors aforesaid unknown, a certain false, forged and counterfeited negotiable promissory note for the payment of money, commonly called a bank note, 'purporting to have been issued by a certain corporation or company called the Morris Canal and Banking Company, duly authorized for that purpose by the laws of the State of New Jersey, which said last mentioned false, forged and counterfeited negotiable promissory note for the payment of money is as follows, that is to say: (setting forth, *verbatim et literatim*, a bank bill purporting on its face to be a five dollar bill of the Morris Canal and Banking Company, dated at their bank at Jersey City; and then proceeding as follows:) with intention to utter and pass the same as true, and to permit, cause and procure the same to be so uttered and passed, with the intent to injure and defraud, &c., he the said Smith Davis then and there well knowing the said note to be false, forged and counterfeited, against the form of the statute, &c.

The trial of the prisoner come on in the New York general sessions in February, 1839. The fact 'of his having *counterfeit bills of the Morris Canal and Banking Company in his possession* with the intent to pass them was proved by several of his accomplices, whose testimony was corroborated by the evidence of unimpeached witnesses, that the prisoner had the control of a *press* and *plates used in making counterfeit impressions of bank bills*. A bill of the Morris Canal and Banking Company was produced in evidence which had been received from the prisoner, and passed by one of his accomplices, which was proved to be counterfeit. The counsel for the prisoner requested the *recorder*, who presided at the trial, 'to charge the jury: 1. That the averment of the fact that the Morris Canal Company was *a company duly authorized by the laws of the state of New Jersey*, must be proved as a matter of fact by legal evidence of the act of incorporation; and that such proof not having been given, the prisoner was entitled to acquittal; and 2. That the corroboration of an accomplice must be as to some fact or facts, the truth or falsehood of which

go to prove or disprove *the direct charge* against the prisoner ; that the corroboration of an accomplice by one or more other accomplices, is not such a coroboration as the law requires ; and that the same rules as to the corroboration of the accomplices, apply to the *collateral facts* intended to prove the *scienter ;* in respect to which points the recorder instructed the jury ; 1. That it was *not necessary* that the prosecution *should produce and prove the charter of the Morris Canal Company ;* that it was enough that proof should be given to satisfy them of the existence of such an institution ; and 2. That the witnesses who were accomplices of the prisoner were not to be believed, unless corroborated by other witnesses who the jury did believe, in facts connecting the prisoner with the possession or with the manufacture of the forged bills of the Morris Canal Company. To which charge the counsel for the prisoner excepted. Besides the above, there was another question of law raised at the trial, and passed upon by the court: a witness called on the part of the prosecution having been impeached, the public prosecutor called a witness to sustain his character, who testified that he had known the impeached witness for 12 or 15 years, but that he was not acquainted with his general character for truth and veracity. The public prosecutor then put this question to him : " Have you ever heard R. D.'s character for truth and veracity questioned ?" which was objected to by the prisoner's counsel. The court overruled the objection, saying that such question was proper, followed up by the inquiry whether the witness under examination would believe the other witness when testifying on oath. To this decision also an exception was taken. The witness then testified that he never heard his character for truth and veracity questioned, except in one instance ; that he knew with whom he associated ; that he never heard his character for truth and veracity spoken of, and that he would believe him on his oath. The prisoner was convicted, and the case was brought before this court upon *certiorari,* bringing up the indictment and bill of exceptions. The case was argued by :

*D. Graham* and *D. Graham, jun.* for the prisoner.

*J. R. Whiting*, for the people.

· *By the Court*, NELSON, Ch. J. The most important question arising in this case is, whether the people were bound to prove by the highest evidence, the legal existence of the *Morris Canal and Banking Company.*

It is conceded to have been unnecessary under the old act, 1 R. L. 405, § 9, but it is insisted that the revised statutes have changed the rule. The former provided, that if any person shall have in his possession any forged or counterfeited *promissory note for the payment of money,* with the intent to pass it and to defraud, knowing the same to be counterfeit, he shall be deemed guilty of felony. *Bank notes* fell under the general description, and became the subject of this offence. The revised statutes have distinguished them from other instruments of the kind, by increasing the degree of punishment annexed ; but this is the only object, or, as I apprehend, effect, of the change. To accomplish it, a separate section became necessary in order to describe the paper thus singled out ; the substance of which is as follows, 2 R. S. 674, § 36 : Every person having in his possession any forged or counterfeit negotiable note, bill, draft, or other evidence of debt " *issued or purporting to have been issued by any corporation or company duly authorized by the laws of the United States, or of this state, or of any other state, government or country,*" &c., with intention to pass it, &c., shall be subject to the punishment prescribed for forgery in the *second* degree. The next section reduces the like offence in respect to all other paper, to forgery in the *fourth* degree, specially excepting bank notes.

The language used to describe the bank paper in the 36th section, is now seized upon as indicating an intent to require legal proof of the existence of the company. We do not so understand it. Even if the terms required *proof of authority* in the company to issue the notes, construing the phrase *purporting to have been issued by a bank lawfully*

The People v. Davis.

*authorized for that purpose*, in its strictest sense, still the *kind or degree of proof* is not prescribed ; and the fact is left to be proved in the ordinary way, under which, as heretofore practised in like cases, the best evidence that might be furnished is not required. This is too well understood to make a reference to authorities necessary.

Under the old law, the *existence of the company*, as well as the genuine or counterfeit *signature* of the officers, (as the case might be,) was frequently involved in the issue ; and it must have been so in cases of altered notes ; and yet *secondary evidence*, such as the acts and operation of the institution and the like, have been invariably received at the oyer and terminer.

But after full consideration we are disposed to construe the section (36th) as not necessarily requiring the existence of a corporation, or association, from which the counterfeit bill or note *purports* to have been issued, in order to bring the case within it ; it is sufficient if the bill *purports on its face* to have been issued by an authorized company ; the terms " *purporting*," in the section, being intended by the legislature to qualify the whole of the succeeding clause. It is well settled that the fact of the *person* being fictitious, by whom the note purports to have been made, does not vary the nature of the offence. See *The People* v. *Stearns, post*, decided in this term, and the cases there collected. And the same rule of course applies to *corporations*. The section was obviously framed upon this view of the law, and with a design not to interfere with it. The counts upon which the prisoner was convicted, are properly framed under this view of the act.

It was urged at the trial and again here, that the corroboration of an accomplice, to be effectual, must be in respect to some fact, the truth or falsehood of which goes to prove or disprove directly the offence charged upon the prisoner ; and that the corroboration of an accomplice, by one or more accomplices, is not the confirmation the law requires. The court advised the jury that the witnesses who were accomplices of the prisoner, were not to be believed by them *unless confirmed by other credible witnesses in respect to the*

*facts connecting the prisoner with the possession of the forged bills, or with the manufacture of them.* Mr. Justice *Alderson,* in summing up in the case of *Rex* v. *Wilkes and Edwards,* 7 Carr. & Payne, 272, observed, " that the confirmation he always advised juries to require was, a confirmation of the accomplice in some fact which went to fix the guilt on the particular person charged." See also 6 Carr. & Payne, 388, 595. Every part of the testimony need not be confirmed ; and the question usually is, whether the jury will believe the witness in such parts of his narrative as the confirmation does not extend to. 2 Russ. 600, and the cases there cited. It appears to me, that the instructions given on this point were as favorable to the prisoner as the most liberal cases on the subject recommend ; certainly more so than can be exacted of the court by the settled rules of evidence. 2 Campb. 133, and the cases before referred to. Within these rules, the jury might have been advised that if they believed the accomplices, they were bound to convict ; though I concede, in the exercise of a sound discretion, the court should usually recommend the propriety of confirmatory evidence, and a discreet jury will generally require it. Here the facts which the court advised should be confirmed by other credible witnesses before a conviction could be justified, tended directly to fix upon the prisoner the offence. His possession of the forged bills of the bank, or the actual forging of them, (the fact to be confirmed, as charged,) if not of the essence, went to the point of the offence, and, if believed, pressed very strongly against him, and laid a foundation for giving credit to the narrative of his associates.

The counsel for the prisoner seemed to suppose that the confirmation should extend to the *possession* or *uttering of the particular bills* counted on : and that the court erred in not so instructing the jury. This is too technical an application of the rule. The *guilty possession* of the money, (the counts relied on by the district attorney,) does not depend so much upon proof of the possession of the particular bill contained in the indictment, as upon the fact of a large *amount* of *bills* being found or proved upon him of like

character, with the attending circumstances. Proof or confirmation of such facts and circumstances also naturally tends to strengthen feebler evidence of the possession of the particular bill; and may well be put forth in that aspect. The same view applies, with diminished force, perhaps, to the charge of *uttering*. The possession of a large amount of like counterfeit paper, or counterfeit paper of other descriptions, shows the guilty knowledge and a preparation to commit the offence ; and would tend to confirm other testimony as to the *uttering* of the particular bill.

It is farther urged, that the court erred in permitting the question to be put to a witness called to sustain the credit of another, whether, *he would believe him on oath*, after an admission that he had never heard his character for truth and veracity spoken of, but who had previously answered that he knew the witness and the persons with whom he associated. I am of opinion the question was properly admitted. If such a question was not permitted, the most respectable man in the community might fail in being supported if his character for truth should happen to be attacked. Living all his life above suspicion, his truth would rarely be the subject of remark. A neighbor might be obliged to admit, as in this case, that he had never heard it spoken of, and yet, undoubtedly, be competent to sustain him. The question is accurately and comprehensively stated by Mr. *Phillipps*, in his treatise on the law of evidence, vol. 1, p. 212, ch. 8. The regular mode, he observes, is to inquire whether they have the means of knowing the former witness' general character, and whether from such knowlege, they would believe him on his oath. Other modes are also proper, and which point the question directly to character for truth and veracity. Mr. *Starkie* goes still further, and expresses the opinion that the proper question is, whether he (witness) would believe him upon his oath, leaving to the cross-examination to bring out the grounds of the belief. 4 Carr. & Payne, 392. The answer to the previous questions in the case before us, fairly imported competent means of knowing the character of the witness

to be supported, to bring it within the spirit of Mr. Phillipps' rule.

Several other minor objections were taken by the counsel for the prisoner, in the course of the trial, which it is not necessary to notice at large. We have examined all of them, and are satisfied they are not well founded.

Proceedings remitted.