Birchard, J.
The first indictment is for an offense punishable-by section 31 of the act for the punishment of crimes, which is-thus defined: “That if any person shall knowingly have in his-possession, and secretly keep any plate for the purpose of striking or printing any false or counterfeit bank notes, any person so offending shall,” etc. In the case of Sutton v. The State, 9 Ohio, 133, words precisely similar, in a case analogous, received a construction from this court, and it was held that an intent to use the-instrument for counterfeiting did not constitute an ingredient of the offense. There is no reason why these words should receive a different construction. The offense is complete where the person knowingly has the plate in his possession, and secretly keeps it. *The statute does not, and was not designed to throw upon the prosecutor the burden of proving the intention with which the plate is thus kept. No man can secretly and knowingly keep-any plate, engraved for the purpose of counterfeiting, and be innocent. It is claimed that under this construction, the plaintiff will be entitled to a discharge, because he was acquitted upon the-first count, which was framed upon such a construction of the statute that the finding of the jury is so inconsistent that no correct judgment could be entered upon it. The case of Hewson v. Saffin, 7 Ohio, 234, is cited in support of this position. That was-a case in replevin, where several pleas were put in, charging the property to belong to several persons, and the verdict was general, *423 finding the truth of each plea. It was bad, and judgment was arrested, because from that verdict it was impossible for the court to say which of the persons was the owner of the property, and, from the nature of things, it could not be the property of each of the several persons at one and the same time. It is, for us,, difficult to see how that ease can have any just application to this. The verdict in this case is consistent and simple; it finds the defendant guilty, as charged in the second count. The verdict of not guilty, upon the first count, does not necessarily create any repugnancy in the verdict upon the second count. It may have been rendered, either because the prosecutor abandoned it, and allowed the verdict to be rendered, as he states, pro forma, under the momentary impression that the first count was insufficient. Be that as it may, it does not affect the case.
Did the court err in admitting the testimony objected to? This presents a question not free from difficulty, and yet the decision below is believed to be consistent with the uniform and oft repeated adjudications upon similar questions since the first organization of the state. The general rule is, that the best evidence must be given which the nature of the case admits of. The rule does not require that the strongest possible assurance of the point in question shall be given, but that no evidence shall be received of a character which presupposes that better and higher evidence is in the possession or power *of the party offering if. Were',these banks suitors in court, claiming the exercise of corporate rights, the offer by them of parol proof to maintain the right, unless it were a right acquired by prescription, would bo within the rule, for it would carry a presumption against them, that, if produced, their charters would show that the franchise in question was not conferred. Hence the rule, in Lewis v. Bank of Kentucky, 12 Ohio, 151: “ The corporators have full knowledge of their powers and capacity, and the means of establishing them.” When they exercise powers under the authority of a written charter, the non-production of that charter, and the attempt to supply it by parol evidence, is an indirect admission that the charter is insufficient, and that if they can not make out by parol a better one than exists on paper, they must fail. An analogous point was ruled by Lord Mansfield, in Roe v. Harvey, 7 Burr. 2484. No such implication necessarily arises when parol proof of the actual existence of a bank, in a sister state, is offered by a third party, *424 and especially when offered by the public prosecutor, against a person charged with counterfeiting the bills or plates of such bank, because the act of counterfeiting implies, on his part, an admission that there is such bank, and that its genuine issues and plates are authorized, and of value. It is irrational to presume that men will take the trouble to counterfeit paper which is wholly worthless. All men are presumed to act according to their interest. No one could have any interest in forging valueless notes. Rules of law are never founded upon unnatural premises. On the contrary, it is, in general, safe to abolish a rule, when the sound reason upon which it was established has ceased to exist.
Admitting the proposition, that if the bank notes* in question were issued by an unauthorized bank, they would be nullities, and that, in that case, the plates might be secretly kept without incurring the penalty of the law, it does not follow that the evidence offered below was incompetent. The rules of presumptive evidence apply to corporations as well as individuals, and a charter ma.y be presumed from the long exercise of corporate rights. United States Bank v. Dandridge, 12 Wheat. 70. The *proof offered in this case showed that paper, of the description alleged to be counterfeited, was current in Ohio, and reputed to be the paper of legally established institutions of Virginia and Tennessee. Proof that their paper had obtained general circulation, and acquired universal confidence in a state like this, at a time when public attention is turned toward all corporations, both foreign and domestic, with eager and jealous scrutiny, certainly raised a violent presumption that the banks bad a legitimate existence, and lawfully possessed the powers which they had exercised. Coupled with the other legal presumption, that no one will counterfeit the valueless paper of an unauthorized bank, and we think the proof, unrebutted, sufficient for the prosecution. This made out a prima facie case, and was ample to cast upon the accused the burden of proving that the laws of Virginia and Tennessee restricted banking generally, or by these institutions in particular. The People v. Davis, 21 Wend. 309, is a case in point. Davis was indicted for having in his possession a counterfeit note of the Morris Canal and Banking Company, and the question was, whether the prosecution were bound to prove the existence of the company, by the production of the charter, and it was held they were not *425 —that they might prove it in the ordinary way, and “that secondary evidence, such as the acts and operations of the company, and the like, had been invariably received at the oyer and terminer.” Is there any real danger in continuing this rule of evidence? It may be presumed that, if it were palpably mischievous, or, even by possibility, occasionally dangerous in practice, it would not have stood, without question, for forty years in Ohio, and in many of our sister states, for a still longer period. But this case even does not show that injustice has been caused by its application. We know, as a matter of fact, that each of the two institutions is legally constituted, and recognized as such, by the courts of Virginia and Tennessee. No actual wrong was committed by the decision complained of, because the proof offered established nothing that was untrue. It is attacked, not for the individual wrong it has wrought in this case, but for the public good, lest *peradventure, it may work harm hereafter to somebody, if allowed to stand as a precedent. In argument, it is admitted that parol proof has, hitherto, “always been held sufficient in similar •cases; but it is said, this is because counsel have not objected that it was secondary evidence, and that omissions of counsel should not be allowed to establish a rule of practice, in opposition to the paramount principles of law.” If the argument be sound that "this kind of evidence, when offered by a third party, does not raise the inference that higher evidence, in the possession of the party, is withheld, and if the act of forgery implies a confession, by the forger, that the instrument which it purports to imitate is valid, it can not well be said to be secondary evidence, because it does not fall within the reason that distinguishes the two classes •of proof. Is it always within the power of the prosecutor to prove the charters of banks incorporated by our sister states ? That they may be procured by taking sufficient pains and ample time, is not ■doubted. Certified copies of any legislative act may be had on application to the executives of the States of Virginia and Tennessee. But, under our constitution, an accused person is entitled to “ a speedy public trial.” He can not lawfully be detained, and committed for trial, without evidence. Nor is that evidence, on a •question of commitment, which is no evidence on a final trial. What, then, would be the effect of a rule that would indispensably ■require the production of the act incorporating a foreign and distinct bank in like cases? It would afford immunity to crime in *426 innumerable cases. It would be as fatal to the success of many necessary prosecutions for counterfeiting, as a rule that would permit the forged signature of the officer of a bank to be disproved by him alone — a rule which has long since ceased to be recognized by the most enlightened tribunals of this country, and at this day is not law in England. Hess v. The State, 5 Ohio, 7; Commonwealth v. Cary, 2 Pick. 47. Some courts still consider the testimony of experts, touching the genuineness of the handwriting, as-secondary and inferior evidence to the testimony of the supposed writer; others avoid the general rule, by assuming that the testimony of *each is primary evidence, while all alike admit the evidence; and avoid the application of the rule which would exclude it. So, in cases of many public officers, proof of official character is permitted by parol, when third parties make the issue,- and even when the officer is a party. Thus, one may show himself to be a constable by proving his own acts in that capacity, and by general reputation. Johnson v. Stedman, 3 Ohio, 94. That he is a collector of taxes. Eldred v. Sexton, 5 Ohio, 215. The-reason of the decision in these cases is applicable hero. “It is more consistent with the ends of justice than to establish a contrary rule.” It is not conclusive evidence; but is so, prima facie, and unless contradicted, must be conclusive.” The character of abank, indeed, whose paper is in general circulation, performing the offices of money in a business community like ours, becomes as well known as the official character of a constable or tax-gatherer, who resides among us. The people in general are as well informed upon the subject as upon many matters of public history. There-is no county in the state where men of integrity can not be found' competent to state whether paper, the money in genei-al circulation among the people, is the paper of a real or unauthorized institution. The continuance of the rule that has obtained, is therefore-.perfectly consistent with the security of individual right; and,, while it subserves public convenience, the mere fact that it is at war with a technical rule, if it ’be so at war, furnishes no good-reason for changing the practice.
To determine the remaining point in the case, let us consider what is the precise effect of the instruction given to the jury.. Transpose the words stated, so as to give the charge according to-its legal effect, and it was this: That if the jury found that the-forged notes were in plaintiff’s possession, and kept by him with- *427 tho formed design and guilty purpose to dispose of them for the-benefit of another, he might be convicted, but not if he was a mere bailee. This is the force of the words employed by the-court. The purpose of the unnamed individual is stated in the wprds of the statute. The jury was to be satisfied that the plaintiff entered into that purpose, or, in Mother words, made it his own.
It is objected that this would constitute him an accessory, under section 36 of the statute. This is not so. Section 36 provides a punishment for one who aids, abets, or procures another to commit the offense punished by section 29. That clause of the twenty-ninth, upon which this conviction was had, is in these words: “If any person shall be detected with a false and counterfeited note-in bis possession, for the purpose of selling, bartering, or disposing of the same.” Now, if Sasser was the accessory, whom did he abet or aid? He was not a mere bailee; if he had been, the jury, under the instructions, would have acquitted him. But he had possession of the notes and plate, and he had a formed design that they should be used and disposed of. The crime provided against was complete; between him and the associate there was guilt. Yet the associate, who it seems was to reap the fruits of the iniquity, was not detected with the paper or plate in his possession. It was not in the hands, even, of his bailee. Ho could not be guilty, for he was not detected with the paper. The objection amounts to this — that, under the clause above quoted, a felon can not be convicted unless he means to make profit from his crime. If generous enough to be guilty for the benefit of some one else, he is therefore innocent. This construction would be equivalent to interpolating into the statute, at the close of the-above quotation, the words, “ for his own exclusive uso and benefit.” We are not authorized to amend the statute in this way. The policy of the law is to punish all who are detected with counterfeit paper in their possession, with intent to sell, barter, or dispose of it, whether for their own benefit, or for the benefit of their friends or accomplices. Judgments affirmed.