JULIUS H. HOMER, Respondent, *v.* CHARLES EVERETT et al., Appellants.

(Argued June 28, 1882; decided January 16, 1883.)

THE plaintiff, a machinist, was employed by defendants to repair a steam engine on the defendants' premises. The engine was in the sub-cellar, and in the floor, alongside the foundation of the engine, was a well-hole or excavation,

SICKELS — VOL. XLVI.     81

about two feet square, filled with hot water, of which danger the plaintiff testifies he had no notice. In passing from one part of the engine to another to make the necessary examination, the plaintiff stepped into this hole, and his leg was severely scalded and injured. This action was brought to recover compensation for such injuries, on the allegation that they were caused by the negligent omission of the defendants to have said hole or tank properly covered or secured.

The questions of negligence on the part of the defendants, and of contributory negligence on the part of the plaintiff, were submitted by the court to the jury, and they rendered a verdict in favor of the plaintiff. The defendants claim that these questions should not have been submitted, but that their motion for a nonsuit should have been granted. The court here say : " We have examined the testimony and think there was sufficient evidence to require the submission of the case to the jury on both of these points."

After a discussion of the evidence, the balance of the opinion is as follows :

" The court, in its charge to the jury, instructed them, among other things, that the defendants had a right to construct the well-hole in the manner they did, and to maintain it without any cover, and to utilize it as intended ; yet that the existence of such a well-hole being somewhat unusual in an engine-room, and it also being unusual that the engine should exhaust into this hole, the moment they called the plaintiff into the room, it became their duty either to effectually cover the well-hole, or else to call the attention of the plaintiff to its existence, and give him proper warning concerning it, and he submitted to the jury whether they had given such warning. The only exceptions taken to the charge were " to that part of the charge which states that all the evidence shows that it was unusual for such a well-hole or receptacle to be where this one was," and to that part of the charge which states that " it was the duty of the defendants to have a cover over such receptacle."

The first exception is untenable, for all the evidence on the subject was one way, and as stated by the learned judge. The

second exception is, also unavailing, for the judge made no such charge as is stated in the exception.    But if, by a liberal con·struction of the exception, it be held to refer to what was in fact said by the judge, viz.: that, on inviting the plaintiff to enter the .engine-room, it was the duty of the defendants either to cover the well-hole, or give the plaintiff proper warning con·cerning it, we cannot hold the instruction to be erroneous.

The only remaining exceptions in the case relate to rulings of the court at the trial, permitting the plaintiff to give evidence of certain declarations of one Kennedy, who was a witness on the part of the defense.

. The plaintiff was permitted to prove that Kennedy made statements to the plaintiff, to the plaintiff's attorney, and to the plaintiff's father, to the effect that the hole into which the plaintiff had stepped had been there a long time before the accident; that if Mr. Everett had warned the plaintiff the accident would not have happened ; that it was a matter of frequent comment among the help in the hotel that it was a dangerous place, and that he, Kennedy, had called Mr. Everett's attention to it as a dangerous place.    These declarations of Kennedy were, of course, hearsay, and clearly incompetent, unless they were contradictory of, or inconsistent with, something which Kennedy had previously testified to as a witness for the defendants, and which was material to the issue, in which case they could be proved for the purpose of discrediting the testimony which Kennedy had previously given.

The substance of the testimony which Kennedy had given on his direct examination was that he was at the time of the injury to the plaintiff steward of the defendants' hotel; that he recollected the accident, and just previous to it saw the plaintiff, in company with Mr. Charles Everett, one of the defendants, pass into the sub-cellar, where the accident occurred ; that it was very light for a sub-cellar, having two windows, and two gas-jets burning at the same time ; and that there was no steam there before the plaintiff went in with Mr. Everett.    That as they passed witness and went down the steps into the sub-cellar, witness heard Mr. Everett say to plaintiff: "Homer, look out for that hole or you will get wet."    That seven or eight minutes afterward witness heard the crackling noise from the

force of the steam through the pipes, and then knew the steam was on, and about half an hour afterward the accident occurred. Witness went near to plaintiff and heard him exclaim what a damned fool he was to step into that hole. Witness further testified that he had never known of any warm water being in the receptacle before the day of the occurrence, and that it (referring to the hole) was, as he judged, placed there because the sub-cellar was on such low ground to receive the water that got into it from the tide. That during the eleven years he had been in defendants' employment he had never known of any warm water being received into the receptacle.

On cross-examination the witness was asked whether he had ever told any one that they had a great deal of hot water in that hole before — whether he had ever said that he himself had warned Mr. Everett that it was a bad trap there, and unless he guarded it some one would fall in ; whether he had not said to plaintiff that he (witness) had frequently told Mr. Everett, before the day of the accident, that it was a bad trap and ought to be covered up ; whether he had not said that it was a matter talked about among the servants in the house ; whether he had not said to plaintiff that if Mr. Everett had cautioned him when he went down there he would not have fallen in. All these questions were answered in the negative. Similar questions were put and answered as to declarations made to plaintiff's father and to plaintiff's attorney.

In so far as the declarations sought to be proved conflicted with material testimony of the witness on his direct examination, they were clearly competent, and the witness having denied making them they could be proved by other witnesses. Some of them were plainly admissible under the rule before stated. The main points which the testimony of the witness tended to prove, on the part of the defense, were, that the cellar was well lighted ; that there had never been hot water in the hole before the plaintiff turned on steam on the day of the accident, and that when plaintiff was entering the cellar Mr. Everett cautioned him to look out for the hole ; and the general tendency of the testimony of witness was to show the absence of danger in entering the cellar. The declaration of the witness that " if Mr. Everett had cautioned plaintiff the accident would not have

happened," was clearly inconsistent with his testimony that such caution had in fact been given; the declarations of the witness to the effect that it was a dangerous place, and that he had called Mr. Everett's attention to it as such were not so clearly within the rule, for the witness had not testified directly that he did not consider it dangerous, nor would his opinion in that respect have been admissible; but his representation of the condition of the cellar, and that there never had been hot water there before, tended to establish an absence of danger, and was in conflict, in some particulars, with the testimony of the plaintiff. The further evidence of declarations of Kennedy as to comments among the help in the hotel respecting danger of the place were clearly not admissible, the fact of such comments being entirely immaterial, and the mere denial by Kennedy on his cross-examination that he had said that such comments had been made, could not render the fact material, or justify the raising of an issue as to the truth of his denial. (*Carpenter* v. *Ward*, 30 N. Y. 243.) But no specific point was made upon the trial in respect to this particular question, and only the same general objection was interposed which had been made to the whole line of examination, and we are inclined to the opinion that if there was a distinction to be made between this and the other questions it should have been pointed out at the time.

But there is a further ground upon which we think the court was justified in admitting all the evidence objected to. Upon the cross-examination of Kennedy he stated that the plaintiff requested him to go to the house of his attorney, and told him he would get a very good stake from plaintiff and his attorney by giving testimony that would go in his favor; that he went accordingly and was questioned by the attorney and told him the truth about the matter. Kennedy was afterward recalled by the defendants and testified that after he had left the employment of the defendants the Homers came after him and the subject of this stake was pressed upon him three times, and they told him what evidence they wanted, and that it was to say that this trap was always in danger, and that the kitchen help, going up and down for the vegetables, were always in danger of falling and meeting with an accident, and if he

would swear to that he would get a stake. That the attorney made this proposition once and the plaintiff at other times. On further cross-examination he varied this statement by saying that what they wanted him to testify to was that the trap was dangerous; that the kitchen help went up and down several times and made complaints to him, and that he had cautioned Mr. Everett to put a cover on, etc. On further direct examination he testified that he never complained of its being dangerous, and that there was nothing more than cold water there.

Aside from the other questions discussed, we think that the issue of an attempt by the plaintiff to suborn the witness, having been gone into on both sides, the court could not well have refused to allow the plaintiff to prove what was said in the conversations at which the attempt to suborn was alleged to have been made, and to show that the very matters, which the witness charged plaintiff with trying to suborn him to testify to falsely, were what the witness had himself voluntarily stated to plaintiff and his attorney as the actual facts of the case.

These statements are the declarations whose admission was excepted to.

The judgment should be affirmed."

---

*William A. Beach* for appellants.

*Charles P. Miller* for respondent.

RAPALLO, J., reads for affirmance.
All concur.
Judgment affirmed.