SUNDERLIN v. HOLLISTER et al.

(Supreme Court, Appellate Division, Fourth Department. April, 1896.)

1. APPEAL—REVIEW.
   Where, at the close of the evidence, the court refuses to submit the case to the jury, and sustains a motion to dismiss the complaint, the plaintiff is entitled, on a review of such decision, to the most favorable consideration of the evidence.

2. NEGLIGENCE—DANGEROUS PREMISES—QUESTIONS FOR JURY.
   In an action to recover for personal injuries sustained by plaintiff in falling through an opening in the floor of defendants' store, through which an elevator was operated, there was evidence that plaintiff was rightfully in the store as a customer, that the opening was directly in line of a passageway between piles of boxes, and was wholly unprotected on the side next the plaintiff, and that it was not very light at the place. *Held*, that the right of plaintiff to be considered a customer, whether or not defendants exercised reasonable care to maintain their premises in safe condition for customers, and the care or negligence of plaintiff, were all questions for determination by the jury.

Action by Helen M. Sunderlin against Alfred N. Hollister and Henry D. Noble. The complaint was dismissed, and plaintiff moves for a new trial on exceptions ordered to be heard at general term in the first instance. Granted.

At the Cayuga circuit the plaintiff's complaint was dismissed at the close of the evidence upon a motion made by the defendants upon the following grounds: (1) That no negligence has been shown on the part of the defendants, or either of them; (2) that the plaintiff had been guilty of contributory negligence, which contributed to her injury, and that the proofs did not establish a cause of action. An exception was taken to the granting of the motion, and thereupon plaintiff's counsel asked leave to go to the jury upon the question of contributory negligence of the plaintiff and upon the question of whether or not the plaintiff had a right to consider herself as a customer of the store. The request was denied, and an exception was taken. The court having directed that the exceptions taken on the trial be heard in the first instance at general term, the plaintiff now moves for a new trial.

Plaintiff's complaint alleges that the defendants were co-partners in business, "and were engaged as merchants on Market street, in the building hereinafter mentioned, in the sale of rubber boots and shoes and goods in said city" of Auburn. The complaint also alleges that the defendants were the owners and in possession and control of a certain brick building and store on

the north side of Market street, which building extended from the north side of Market street to the south side of Franklin street, with the appurtenances thereunto belonging, which premises were at the time, and had been for a long time prior thereto, occupied by the defendants as a store for the sale of goods in which they were dealing, and that the store "was a place of resort for all persons having occasion to go to and enter said store to purchase goods kept for sale by defendants, and otherwise." Plaintiff alleges that on the west side of the store were "narrow alleys or passageways from the front side of said store on Market street through said store northerly to, or nearly to, Franklin street, the sides of said alleys or passageways being composed of tiers of boxes or receptacles of goods, filled or empty, from the floor up for several feet; and on the westerly side of said store there was such narrow way or passage leading from the entrance on Market street back through said store to Franklin street." Plaintiff alleges that on the 17th of November, 1893, there was in or at the east side of said alley or passageway, on the said floor, "a hole or open hatchway or opening or elevator shaft several feet in width and length, opening into the cellar of said building, the bottom of which cellar was several feet below said first floor of said building, and of which opening the defendants had full knowledge, and which opening or hatchway or shaft was either constructed in said floor when the said building was erected by defendants, or at some time afterwards, and a long time before the 17th day of November, 1893; that said hole or opening was, at said date, and had been a long time previously, wholly unguarded on the west side; that there was no impediment to the stepping into said hole by any person who might be near the same at said west side, and that said opening was in said condition at said date." Plaintiff avers that "on or about November 17, 1893, she was lawfully in said store in discharge of her lawful business, and was in said westerly alley way, and near said opening or hole aforesaid in said store, of which opening she had no knowledge." It is also alleged that the defendants, being such owners and occupants, and knowing the premises and location of said hole, "left the same open, and permitted the same at said time to be wholly open, unprotected, and unguarded at the west side as aforesaid, and that said opening had been so unprotected for a long time previous to said date." And the complaint further alleges that the defendants "wrongfully, carelessly, and negligently left and allowed said opening and hole or shaft to remain wholly open, unguarded, and unprotected at the west side. And plaintiff avers that on said 17th day of November, 1893, the plaintiff was standing lawfully and by permission of the defendants in said westerly alley way in said store, and without notice of the existence of said opening, and without fault or negligence on her part, stepped into said opening, which was situated in an open place in or close to said alley way, and stepped into the same on the westerly side, and fell through the same into the cellar beneath, a distance, as she is informed and believes, of about ten feet, and was greatly injured." The complaint further alleges that the plaintiff at the time was lawfully in the store; "that she entered said store as a customer, and for the purpose of purchasing rubbers of the defendants (which they kept and held, as they claimed, for sale) as merchants, as she and her family and friends had done and purchased in said store of the defendants or their agents upon several occasions before." And she alleges that at the time she had lawful business and a right in said store "as a customer and intended buyer of the defendants' goods." In the answer of the defendants they "admit that they were at the time mentioned in the complaint, and still are, co-partners, engaged in the sale of rubber boots and shoes at wholesale, in their brick store, which extends from the north side of Market street, in the city of Auburn, to the south side of Franklin street, and was and still is owned, possessed, and controlled by them, and known as 'Nos. 21–23 Market Street,' under the firm name of Hollister & Noble"; and they deny the other allegations of the complaint.

Argued before HARDIN, P. J., and FOLLETT, GREEN, and WARD, JJ.

F. D. Wright, for plaintiff.

John M. Brainard, for defendants.

HARDIN, P. J. Inasmuch as the plaintiff's complaint was dismissed at the trial, she is entitled to the most favorable view of the evidence and the inferences that are deducible therefrom in the review of the decision made at the time her complaint was dismissed. Raabe v. Squier, 148 N. Y. 87, 42 N. E. 516; Hanover Bank v. American Dock & Trust Co., 148 N. Y. 619, 43 N. E. 72. On the afternoon of the 17th of November, 1893, the plaintiff, in company with her sister, Mrs. Davis, visited the store of the defendants for the purpose of purchasing a pair of rubber shoes. They entered the store from Market street, and passed several feet northerly along an aisle until they reached an aisle extending towards the west side of the store, and then they proceeded to a point where the aisle entered another aisle running northerly, towards the north side of the store on Franklin street. This was the usual and ordinary passageway used by persons visiting the store entering from Market street. Plaintiff and her sister went into the west aisle, and, turning north, saw persons in the north part of the store, and among them one of the defendants, Noble, and some of his employés, to a point near an aisle running east and west, and while they were about 38 feet south from defendant Noble, who was standing at a counter. The plaintiff halted, and her sister proceeded north in the aisle to the vicinity to where the defendant Noble and two of his employés stood. Mrs. Davis then inquired of the defendant the whereabouts of Nagle, one of the clerks. She was informed by the defendant Noble that "he was over there," and the defendant Noble at the same time pointed towards the east side of the store. Nagle seemed to have been the clerk that the plaintiff and her sister desired to have their transaction with, and when Mrs. Davis started to return along the aisle to where she had left her sister she heard the plaintiff scream, and upon arriving at the place where she had left the plaintiff she did not find her sister, and, hearing another scream, she stepped a few steps east along the east and west aisle, and she discovered from another scream from below that her sister had fallen into the aperture in the floor, which was not guarded on the west side. The evidence tended to show that the floor was black or dark, and that the space in and about the opening was somewhat dark, and that there was nothing especially to attract the attention of any one to the opening in the floor. Evidence was given tending to warrant a finding that the plaintiff had no knowledge or notice of this opening in the floor. Some 40 feet down the main alley way, and approximately near the center of the floor, there was an alley way some 5 feet wide, which led easterly 7 feet to the edge of the elevator well, which was as wide as the alley and $3\frac{1}{2}$ feet across east and west. It is claimed by the defendant that this was not used for passage, but was used only to reach the elevator from the main aisle. It stopped at the elevator, which, on its east side, was in line with the side of the next aisle west, "and on which line bars had been placed across the elevator opening." The evidence tended to show that Nagle was working in the most easterly aisle near Market street; that Olmstead was using the elevator, which was then standing at the next floor above.

At the junction of the second alley with the one leading to the office from Market street hung a sign some four feet long, having printed on it the words, "Positively no Goods Sold at Retail." There was some evidence tending to show that the employés had received verbal notice not to sell at retail. The evidence, however, given tended to show that during the 8 years the defendants had been using this building some 16 different purchases had been made at retail, and several of the sales had been made by the clerks Knapp and Nagle. Although there was some evidence given tending to indicate that the defendants had no knowledge of such sales, there was other evidence from which the jury might have found that the defendants had notice that in several instances such sales were made. It seems to be conceded that the elevator aperture was, "on its eastern side, barred, to prevent employés from stepping off the aisle into the well; such an accident to a stranger having once occurred." The evidence indicates that it never had been guarded on the west side. Nagle, the clerk for whom Mrs. Davis inquired, was her nephew. It seems that the rubber goods that were sold at retail were paid for in cash, and that the cash was taken to the office by the clerk who made the sale, and placed in the money drawer,. and that at the end of each day, when such sales were made, the cash was counted and entered in the cash book as a gross item. From all the evidence given upon the trial the jury would have been warranted in finding that the plaintiff was authorized to enter the store on the occasion and for the purpose which she avows she had in entering the store at the time of the accident.

In Hart v. Grennell, 122 N. Y. 374, 25 N. E. 354, it was said in the course of the opinion by Brown, J., viz.:

"The general rule applicable to persons occupying real property for business purposes, and who invite and induce others to visit their premises, is that they must use reasonable prudence and care to keep their property in such a condition that those who go there shall not be unreasonably and unnecessarily exposed to danger. The measure of their duty is reasonable prudence and care. Larkin v. O'Neill, 119 N. Y. 221, 23 N. E. 563; Sweeny v. Railroad Co., 10 Allen, 368–373. The rule has reference to such dangers. as might reasonably be anticipated by a prudent and careful man."

In James v. Ford, 9 N. Y. Supp. 504, in the course of the opinion it was said:

"It thus became defendant's duty to exercise reasonable care in maintaining the premises and the means of entrance and departure at all times in such condition that others visiting his store upon business might enter and depart with safety to themselves, and for an injury arising from the breach of that duty the defendant is answerable in damages."

In Larkin v. O'Neill, 119 N. Y. 221, 23 N. E. 563, the only evidence of negligence was the presence of a figure for exposing children's clothing upon steps next the railing, and the absence from the steps of footholds,—that is, brass plates or rubber pads. In that case it appeared that a large number of people frequented the store of the defendant every day, and in the course of the opinion it was. said, viz.:

"He was bound to use reasonable prudence and care in keeping his place. in such a condition that people who went there by his invitation were not.

unnecessarily or unreasonably exposed to danger. The measure of his duty was reasonable prudence and care."

And in support of that proposition Beck v. Carter, 68 N. Y. 283; Larmore v. Iron Co., 101 N. Y. 391–395, 4 N. E. 752; and Bennett v. Railroad Co., 102 U. S. 577,—were cited.

In the Larkin Case the plaintiff fell while walking down a broad carpeted stairway between 4 and 5 o'clock in the afternoon. There was nothing in the manner in which the stairs were constructed, used, or kept from which such a result could reasonably be anticipated; and upon the evidence in that case it was finally said that it did not present a case of negligence on the part of the defendant proper to submit to the jury. The case differs so essentially from the facts in the case before us that it does not support the contention of the defendants. In Homer v. Everett, 47 N. Y. Super. Ct. 298, affirmed 91 N. Y. 641, it was said to be the duty of the owner or occupant of a building to maintain it in such a condition that those persons whom he invites upon the premises shall not be injured by any defect in the building. In McRickard v. Flint, 114 N. Y. 222, 21 N. E. 153, it was alleged that the defendant was liable for not having complied with chapter 547 of the Laws of 1874, requiring that the openings in each floor shall be protected by a substantial railing; and while that case is placed largely upon the force of the statute, in the course of the opinion delivered by Bradley, J., in speaking of the failure of the defendants to comply with the statute, as shown by the evidence, he observed:

"It was a question for the jury, and upon the request of the defendants' counsel they were instructed that the plaintiff could not recover unless the jury found that the defendants were negligent in the use of their premises, and that, if the condition of the doors and the elevator, and its use by the defendants, were reasonable, the plaintiff could not recover. The evidence was such as to justify the conclusion that the defendants were chargeable with negligence. And they owed to any person who should lawfully go into the building the duty, which the statute imposed upon them, to do him no injury by their negligence in that respect. That duty they owed to the plaintiff, who went to the premises for a legitimate business purpose."

—And upon that opinion a recovery was upheld.

In Swinarton v. Le Boutillier, 7 Misc. 640, 28 N. Y. Supp. 53, in the course of the opinion delivered in that case, the doctrine laid down by Shearman & Redfield on Negligence in section 704, that it is the duty of parties to use ordinary care and diligence to keep their premises in a safe condition for the presence of persons who come thereon by invitation, express or implied, or for any other purpose, beneficial to them, was approved, and a verdict based upon evidence tending to show that there had been noncompliance with the rule was upheld. In a note to Mallach v. Ridley, 9 N. Y. Supp. 922, several cases are cited and commented upon tending to support the general rule to which we have already adverted, indicating that, where there is evidence upon the question of whether there has been reasonable care or not exercised by the defendants, the case should be submitted to the jury.

The learned counsel for the defendants calls our attention to Larmore v. Iron Co., 101 N. Y. 391, 4 N. E. 753. In that case it was

held that an owner of premises owes no legal duty to a stranger coming upon his premises which requires him to keep the machinery in repair. But the learned judge who delivered the opinion in that case recognizes the rule which we have already stated, and uses the following language at page 395, 101 N. Y., and page 753, 4 N. E.:

"So, also, where the owner of land, in the prosecution of his own purposes or business, or of a purpose or business in which there is a common interest, invites another, either expressly or impliedly, to come upon his premises, he cannot, with impunity, expose him to unreasonable or concealed dangers; as for example, from an open trap in a passageway. The duty in this case is founded upon the plainest principles of justice."

—Citing Corby v. Hill, 4 C. B. (N. S.) 556; Smith v. Docks Co., L. R. 3 C. P. 326; Holmes v. Railway Co., L. R. 6 Exch. 123. And he finally concludes in that case by a discrimination in the following words:

"But in the case before us there were no circumstances creating a duty on the part of the defendant to the plaintiff to keep the whimsey in repair, and consequently no obligation to remunerate the latter for his injury."

We think the case does not aid the contention of the defendants.

Defendants' learned counsel calls our attention to Hilsenbeck v. Guhring, 131 N. Y. 674, 30 N. E. 580, which is quite unlike the case before us. There the plaintiff, in the nighttime, opened a door, and stepped to the head of a stairway, and fell down stairs, and it was held that the facts disclosed did not present a case for the jury. The case of Sterger v. Van Sicklen, 132 N. Y. 499, 30 N. E. 987, recognizes the rule that, where property is put to public use, the party is bound to observe reasonable care in keeping it in condition to save harmless those invited to come upon it for his benefit and profit.

Upon all the circumstances we are inclined to think the jury would have been warranted in finding that the plaintiff entered the store as a customer under an implied authority from the defendants, and that she was rightfully upon the premises, and that under the circumstances disclosed as to the presence of one of the defendants just before the injuries were received, the authority of the defendants for her being in and about the store might have been found by the jury, and the evidence required the court to submit to the jury the question as to whether the defendants had exercised that care and prudence which the law requires of them in respect to parties situated as the plaintiff was at the time she received the injuries alleged.

2. It is contended in behalf of defendants that plaintiff was guilty of contributory negligence. Upon all the facts and circumstances disclosed in the case upon that subject, we are led by them to say that a question of fact was presented for the jury to determine whether she was free from contributory negligence. It is only in exceptional cases, where facts and circumstances attending the accident are disclosed, that it becomes a question of law instead of a question of fact. Simmons v. Peters, 85 Hun, 97, 32 N. Y. Supp. 680; Wilcox v. Railroad Co., 88 Hun, 263, 34 N. Y. Supp. 744; Mc-Rickard v. Flint, 114 N. Y. 222, 21 N. E. 153. In the course of the opinion delivered in the latter case by Bradley, J., it was said:

· "It was the duty of the plaintiff to exercise reasonable care, and to take observation of that which was apparent to view as he proceeded. But what is due care and diligence depends upon circumstances."

We see nothing in the case which requires us to say that the testimony points as much to her negligence as to its absence, and therefore the rule laid down in Wiwirowski v. Railroad Co., 124 N. Y. 420, 26 N. E. 1023, is not to be applied to the case. The explanations made by the plaintiff of the circumstances attending her fall are such as to leave a fair question of fact for the jury to determine whether she used such care and caution as a person of ordinary prudence would have exercised at the time she fell. The foregoing views lead to the conclusion that there was error in dismissing the plaintiff's complaint, and that the questions of fact ought to have been submitted to the jury.

Motion for a new trial granted, and a new trial ordered, with costs to abide the event. All concur.