PETER McGOVERN, as Administrator, etc., of HUGH McGOVERN, Respondent, v. STANDARD OIL COMPANY of New York, Appellant.

*Negligence — a brakeman killed by a low crossbeam maintained by an oil company — negligence of the company — contributory negligence affected by the brakeman's attention being diverted by cries.*

The Standard Oil Company made an opening in a fence upon its premises through which passed a branch railroad track, constructed and maintained by it for business purposes, over which opening was a crossbar some four feet above the roof of an ordinary box car, and provided no signal ropes or other device to call attention to it.

A brakeman on a car passing under this crossbeam was struck by it, thrown under a car and killed.

*Held,* that such a structure subjected the use of the track by brakemen to a new and additional peril;

That, in an action brought by the administrator of the brakeman against the oil company, based upon its alleged negligence in this particular, the question whether the company had exercised that care and prudence which the law required of it in the premises, was properly submitted to the jury;

That, although the evidence indicated that the intestate had had opportunities to
    acquire a knowledge of the situation and condition of the crossbeam, yet, as
    by the cries of a person near by, just before the accident, his attention was
    drawn in a direction away from the crossbeam, it could not be said as matter
    of law that he was guilty of contributory negligence.

APPEAL by the defendant, the Standard Oil Company of New
York, from a judgment of the Supreme Court in favor of the plain-
tiff, entered in the office of the clerk of the county of Onondaga on
the 30th day of November, 1895, upon the verdict of a jury for
$2,500 rendered after a trial at the Onondaga Circuit, and also from
an order entered in said clerk's office on the 23d day of November,
1895, denying the defendant's motion for a new trial made upon the
minutes.

Plaintiff's complaint alleges that the defendant is the owner of a
certain plant known as the Standard Oil Works, located in the city
of Syracuse, adjacent to certain railroad tracks known as the West
Shore railroad, operated by the New York Central and Hudson
River Railroad Company, and that the defendant's plant, tanks and
oil reservoirs, and other structures, are substantially inclosed by a
high board fence; that the defendant, for its business purposes,
caused to be constructed a branch railroad track running from the
railroad known as the Syracuse, Ontario and New York railroad, in
an easterly direction into and upon the grounds of the defendant,
part of which branch was inclosed by such fence; that, at the point
where the branch track enters the inclosure of the defendant, two
high posts were erected, one on either side of the branch track, upon
which gates were swung for the purpose of inclosing the defendant's
plant.   It is averred that the defendant caused to be placed upon
the top of such gate posts a beam extending from one post to the
other and across said branch track, and a brace supporting said beam,
and that that condition of things had existed for a long time prior
to the accident.   It is also averred that the defendant, from time to
time, caused to be run in on said branch track and placed within the
inclosure, various kinds of freight cars, some of them known as oil
tank cars and some known as box cars, which were used by the
defendant for receiving and delivering oil and other merchandise.
The beam or crossbar was some fifteen feet and six inches above
the rail, or about four feet above the ordinary box car, "and so low
that a man of ordinary height standing on the deck of an ordinary

box freight car could not pass under said beam and the brace supporting it without stooping to a considerable extent."

It is alleged that on the 4th of December, 1894, Hugh McGovern, plaintiff's intestate, was in the employ of the railroad company, and "was, in the proper discharge of his duties, engaged as brakeman in removing some cars from said enclosure of this defendant upon said branch track, and as he was standing or working on the deck of a box car that was moving toward the westward of said branch track, he was struck by said crossbeam or brace and knocked off the deck of said box car on to the said track, run over by the following car and killed."

It is alleged in the complaint that the defendant was guilty of negligence in extending the beam and maintaining the same, " extending from one of said posts to the other and the brace supporting said beam over said branch track at such a height as to be dangerous to the life and limb of men engaged in removing said cars into and out from the said premises or enclosure of this defendant."

It was further alleged " that it was also careless and negligent in not constructing or causing to be constructed over said branch track, and at either side of said beam, tell-tale ropes or wires or any other contrivance by which warning might be given to men engaged in the operation of cars under said beam that they were approaching said beam and brace and in danger of injury if they did not avoid it."

It is alleged that the intestate was free from contributory negligence or carelessness which caused or contributed to the accident from which he was killed.

Besides the denials found in the defendant's answer is an averment that the branch track referred to in the complaint " was constructed and is maintained, operated and owned by the New York Central & Hudson River Railroad Company, and that said railroad company was the owner of the locomotives, cars and trains used on said branch, and had at the time of the alleged accident entire charge and supervision of said branch track and the movement of all trains, locomotives and cars thereon; that the fence, posts and gates referred to in the complaint were constructed with the knowledge and consent of the New York Central & Hudson River Railroad Company," and that the accident was caused by the negligence of the plaintiff's intestate.

*W. P. Gannon*, for the appellant.

*M. E. Driscoll*, for the respondent.

HARDIN, P. J.:

When the plaintiff rested the defendant stated several grounds upon which it claimed a nonsuit, and its motion in that regard was denied and an exception was taken. At the close of the entire evidence the motion for a nonsuit was renewed on the same grounds, and the attention of the court was called specifically to the claim of the defendant that the plaintiff was guilty of contributory negligence. The motion was denied, and the case does not show an exception taken to the decision made by the trial judge. The case was then submitted to the jury in an extensive charge, presenting the question of the defendant's negligence and the question of the intestate's freedom from negligence, to which charge no exception was taken.

The crossbeam was a piece of timber four by six fastened on the posts; from it to the top of a box car was a distance of between three and four feet.

According to the evidence the track into the defendant's premises was laid under the supervision of the defendant, the West Shore road furnishing the iron and material. The fence around the defendant's yard, including posts, gates and crossbeam, was erected by the defendant in the summer of 1892, after the railroad track was laid under the direction of the superintendent of the defendant, and in accordance with its plans, the crossbeam being a part of the plan.

On the 4th of December, 1894, a shifting engine, which was used to move cars, and a train on which the intestate was at work backed up in a westerly direction on the branch track leading into the premises of the defendant and stopped before reaching the gateway. The intestate and one Redden got on to the ground and walked together in an easterly direction through the gateway, which was open, towards the easterly part of the defendant's yard; at that time there were five cars standing in the defendant's yard, three oil tank cars and a box car, and east of that an oil tank car. The cars were coupled together and the train began to move out and the intestate climbed upon the box car on a ladder on the south side of

the east end of the car; when he got upon the top of the freight car he was near the crossbeam, which was at his right hand, and as he was stepping on to the car, a man by the name of Wendell, who was in the employ of the defendant, and who seems to have been a German and not able to speak English with much accuracy, began to halloo to him and to make motions. The intestate's attention was directed toward Wendell, and he looked toward the north or northeast where Wendell was standing, and before Wendell had time to make himself understood or call a second time the intestate was swept off the car by the beam and fell on the south rail on the track, and the tank car which followed the box car ran over him and killed him. The intestate had worked in the West Shore yard from sometime in September, 1892, until the last of August, 1894, and part of that time had been employed on the engine which did the work of shifting cars to and from the works of the Standard Oil Company. On the thirty-first of August he left the employ of the company and returned to it on the 18th of October, 1894, and on the first of December he was with the crew which placed in the Standard Oil Company's yard the car upon which he was standing at the time the accident happened. The evidence left a doubt as to whether the deceased heard or understood the warning supposed to have been given to him by Wendell just before the accident happened. When defendant erected the posts and placed the crossbeam on the same it well understood that its business required the movement of cars in and out its yard through the gateway, and that the track was laid for the purpose of contributing to the business in which the defendant was engaged, and the manner in which the gateway was constructed and the beam placed across the posts forming the side of the gateway, clearly indicated that a person riding upon the top of a car was in danger of being caught and surprised by the presence of the beam.

It is provided in subdivision 2 of section 49 of chapter 565 of the Laws of 1890 that it shall be the duty of every railroad corporation operating its road by steam " to erect and thereafter maintain such suitable warning signals at every road, bridge, or structure which crosses the railroad above the tracks, where such warning signals may be necessary, for the protection of employees on top of cars from injury."

As the appellant's counsel contends, the section does not in terms apply to the defendant, as it is not a "railroad corporation operating its road by steam." However, the track laid to and in the yard of the defendant for its use in its business, when laid could have been used in the manner in which it was being used on the occasion of the accident without danger to the persons operating trains upon it. When the defendant erected the gate posts and placed a crossbeam upon the same upon its premises, it erected a structure which rendered the use of the track, by cars and brakemen called upon to aid in their use, subject to a new and additional peril; and it must have understood that persons upon the top of a car had only from three to four feet above the top of the car in which to escape injuries liable to ensue by reason of the crossbeam placed there by the defendant.

In *Hart* v. *Grennell* (122 N. Y. 374) it was said : "The general rule applicable to persons occupying real property for business purposes and who invite and induce others to visit their premises is that they must use reasonable prudence and care to keep their property in such a condition that those who go there shall not be unreasonably and unnecessarily exposed to danger. The measure of their duty is reasonable prudence and care. (*Larkin* v. *O'Neill*, 119 N. Y. 221; *Sweeny* v. *O. C. & N. R. R. Co.*, 10 Allen, 368.)"

That case was approved in *Flynn* v. *C. R. R. Co.* (142 N. Y. 439), and in the course of the opinion delivered it was said: "The general rule applicable to persons occupying real property for business purposes is that they must use reasonable prudence and care to keep their property in such a condition that those who go there shall not be unreasonably and unnecessarily exposed to danger. The measure of their duty is reasonable prudence and care. (*Larkin* v. *O'Neill*, 119 N. Y. 225; *Newall* v. *Bartlett*, 114 id. 399; *Hart* v. *Grennell*, 122 id. 374; *Ackert* v. *Lansing*, 59 id. 646.)"

In *Sterger* v. *Van Sicklen* (132 N. Y. 503), in the course of the opinion, it was said: "There are cases where the use to which an owner of property puts it is of such a public character that he is bound to observe reasonable care in keeping it in such a condition as to save harmless those who are invited to come on to it for the benefit and profit of the owner."

That opinion further refers to *Clancy* v. *Byrne* (56 N. Y. 129), and the liability in that case was placed upon the ground that the pier which gave way was "a public place or highway. It was private property to a certain degree, though held as such for public objects. * * * By the use to which it was put by the occupant, from which a profit to him was directly or indirectly derived, and which persons of the calling of plaintiff (drayman) aided, there was a license and an invitation given to the plaintiff to come and go on this pier in the following of his employment, * * * and thus was imposed on him the duty of taking care, so long as it was thus kept open, that those who had a lawful right to go there could do so without danger to their property."

In *Sunderlin* v. *Hollister* (4 App. Div. 478) we had occasion to refer to the authorities already cited and to comment upon others that are mentioned in the opinion. Upon all the evidence found in the appeal book we are of the opinion that the learned trial judge was warranted in submitting to the jury the question as to whether the defendant had exercised that care and prudence which the law requires in respect to parties situated as the plaintiff's intestate was at the time he received the injuries alleged. The evidence was carefully alluded to and intelligently presented in the charge to the jury, and we are inclined to accept their verdict, which is to the effect that the defendant had not fully discharged its duty toward persons situated as the plaintiff's intestate was. As already intimated, there was no exception to the charge in that regard.

(2) We come now to the more critical and serious question involved. Was the plaintiff's intestate free from contributory negligence? In approaching this question we must bear in mind that all the facts and circumstances disclosed in respect to the situation of the premises where he was engaged, and in respect to his own conduct on the occasion of the occurrence of the injury, as well as to his antecedent employment in and about the premises, and the knowledge which it must be presumed that he had of the structures in question, together with the circumstances relied upon by the defendant to indicate that he was warned just before he was struck — questioned as the accuracy of that statement is by the plaintiff — with some evidence and circumstances tending to contradict the position taken in respect thereto by the defendant and

its witness Wendell, were all presented fully and clearly in the charge upon the question of the intestate's freedom from contributory negligence, by the trial judge to the jury; and the jury, in the light of all the facts disclosed by the evidence, have found affirmatively that the plaintiff's intestate was free from contributory negligence. This brings to us a two-fold question: *First,* was it error for the court to refuse to rule as matter of law, at the close of the plaintiff's evidence, that the plaintiff's intestate was guilty of contributory negligence; and, *second,* is the evidence such as to require us to say, as matter of law, that the plaintiff's intestate was guilty of contributory negligence, or that the evidence is of such a character that the finding that the plaintiff was free from contributory negligence is against the weight of evidence?

The evidence indicates that the intestate had opportunities to acquire knowledge of the condition of the crossbeam, in the course of his employment, prior to the fourth of December, when the injury occurred.

The witness Bentley testifies that, in the early days of December, the intestate worked with the engine and the crew that placed nearly all the cars on the defendant's property.

The witness Kane testifies that, on the first of December, the intestate was with him when he placed four union tank cars inside the defendant's yard, and at the same time moved a box car which was standing east of the gate.

The witness Grayson, who was an employee of the defendant, testifies to having seen the intestate inside of the yard on at least two occasions before the time of the accident.

Appellant's learned counsel confidently calls our attention to *Williams* v. *D., L. & W. R. R. Co.* (116 N. Y. 628). In that case the court considered the question whether the plaintiff was guilty of contributory negligence, and the learned judge who delivered the opinion said: "This depends upon the question as to whether he knew or ought to have known that this bridge was low, and that he could not pass under it whilst standing upon the top of the box car."

It was further said in the course of the opinion: "It does not appear that the plaintiff's attention was diverted by anything that would tend to relieve him from the imputation of contributory negligence on the occasion in question; and inasmuch as such negligence

appears from his own testimony, the exception to the refusal of the defendant's motion for a nonsuit was well taken."

In the case before us it was impossible to give any testimony as to the circumstances of the accident from the deceased, as his mouth was closed by death. Whether the general doctrine intimated in the *Williams* case should be applied to the case in hand is rendered somewhat doubtful by the difference in the evidence in this case from the evidence in that case, and more particularly so by a subsequent decision made in *Wallace* v. *C. V. R. R. Co.* (138 N. Y. 302), in which latter case it was held : "A brakeman on top of a moving train, as matter of law, is not chargeable with negligence simply because he does not constantly bear in mind the precise location where his train and where every bridge over the track is."

The learned judge who delivered the opinion in the latter case said : "The defendant calls our attention to the case of *Williams* v. *D., L. & W. R. R. Co.* (116 N. Y. 628) as an authority in its favor. It must be conceded that the latter case goes far to uphold a nonsuit upon such facts as we have here. But it was a border case, decided against the plaintiff by a divided court, and it is distinguishable from this case in that the brakeman there knew that he was approaching the bridge, and, when near the bridge, turned his back towards it, knowing, or bound to know, as the court held, that it was a low bridge. Under such circumstances it was held that he was guilty of contributory negligence."

The opinion further continues in the following language : "We think, therefore, that the trial judge erred in holding as matter of law that the plaintiff in this case was guilty of contributory negligence. All the evidence bearing upon that branch of his case should have been submitted to the jury."

In deference to the last case we are inclined to say that the trial judge was warranted in refusing to grant a nonsuit, and in refusing to hold as matter of law that the intestate was guilty of contributory negligence. (*Friess* v. *N. Y. C. & H. R. R. R. Co.*, 67 Hun, 210, and cases cited.)

It may be conceded that intelligent persons reading the evidence found in the appeal book would differ as to what inferences should be drawn therefrom, and perhaps as to what deductions should be made from the evidence. Under such circumstances the trial judge

was called upon to submit the evidence to the jury for its interpretation, and, as we have before stated, he clearly and cautiously presented all of the evidence relating to the intestate's freedom from contributory negligence to the jury. Their verdict affirmatively finds that the intestate, at the instant of receiving the injuries, was not guilty of contributory negligence.

It seems that due deference to *Wallace* v. *C. V. R. R. Co. (supra)* requires us to say that no error was committed by the trial judge. We are, therefore, inclined to sustain the verdict.

All concurred.

Judgment and order affirmed, with costs.