Conkey and Herrington *v.* The People.

COURT OF APPEALS. Albany, December, 1860. *Comstock, Selden, Denio, Davies, Clerke, Wright, Bacon* and *Welles,* Judges.

CHARLES M. CONKEY and WALTER HERRINGTON, plaintiffs in error, *v.* THE PEOPLE, defendants in error.

On the trial of an indictment for rape, after giving evidence of the commission of the offense, it is competent to prove acts of violence to property committed by the defendants in the same room and immediately after the alleged rape, for the purpose of characterizing the transaction.

Where the husband of the prosecutrix was present at the commission of the alleged offense, and was also present, the next morning, when she complained of her treatment to a third person, it was held that it was not erroneous to prove by the husband that he also had made, at the same time, a communication to such third person of what had happened, the details of such communication not having been given in evidence.

Where a witness testified that he had heard three or four persons residing in an adjoining town, but not in the immediate neighborhood of the prosecutrix, speak of her character for chastity, but did not know how she was generally regarded in the community, it was held that the witness was not competent to testify as to the general character of the prosecutrix for chastity.

A witness called to impeach general character, must be able to state what is generally said of the person by those among whom he dwells or with whom he is chiefly conversant.

Where a witness testified that he lived about a mile and a half from the prosecutrix, and said that "he did not know as he had the means of knowing about her character," but afterward said "he thought he was prepared to judge," it was held not to be erroneous for him further to answer, that he considered her general character good, it appearing that the defendants' counsel did not cross-examine him as to the grounds upon which, after first hesitating, he had stated he was prepared to testify.

The indictment contained three counts: first, against both defendants for rape; second, against C. for rape, and H. for assisting him in committing it; third, against both prisoners for assault and battery, with intent to commit a rape.

The jury returned the following verdict: "They find the prisoners at the bar guilty of the offense charged in the indictment." It was held to be equivalent to a general verdict of guilty, and that upon it the court might properly pass judgment against the defendants on the count charging the highest grade of crime.

An objection that the indictment appeared on its face to have been presented by twenty-four grand jurors, is not available on error, where the defendants pleaded to the indictment, and proceeded to trial without objection in the court below.

THE plaintiffs in error were tried and convicted at the Otsego Oyer and Terminer in December, 1859, upon an indictment for rape, and sentenced to the State prison at Auburn, for ten years and four months each. The indictment contained three counts: the *first* against both for a rape; the *second* against Conkey for the rape, and Herrington for directly inciting and assisting Conkey in the commission thereof; and the *third* against both for assault and battery, with intent to commit rape. On the trial, the District Attorney called Anna Scott, the prosecutrix, and among other things, offered to prove by this witness, that at this time and after the commission of the offense charged in the indictment, the defendant Conkey committed certain trespasses upon the complainant, to wit: that he overturned the stove, threw some meat out of the window, breaking the glass, &c.; to which offer the defendants, by their counsel, objected, and also to all evidence upon that subject, upon the ground that no such offense was alleged in the indictment, and that the evidence was irrelevant, incompetent and immaterial, and was improper against Herrington. The court overruled defendants' objection, and decided that the evidence was competent and proper, to which decision the defendants, by their counsel, excepted.

Witness said: The defendant Conkey knocked a pot of meat off the stove, and threw the meat out of the window; he tipped over the stove and injured the teakettle. Conkey did this alone, Herrington setting on the bed; after Conkey began to carry on too bad, Herrington told him that that would not answer; that he was carrying on too bad; and began to pick up the meat and put it in the pot.

Conkey and Herrington *v.* The People.

The district attorney also put to this witness the following question: Did you and your husband go to New Berlin the next day to get a warrant? The counsel for the defendants objected to this question, as incompetent, irrelevant and immaterial. The court overruled the objection, and allowed the question to be answered, to which decision defendants excepted.

Witness said: I did go to New Berlin, and before Esq. Foote, the next day, to get a warrant.

Question by the district attorney: Did you tell anybody of it before Foote? Objected, upon the ground and for the reasons last above stated, which objections were overruled by the court, and the question allowed and the evidence admitted; to which decision the defendants excepted.

The witness said: Mr. Edwards came down Sunday morning to help put up the stove; I did not tell him all that was done; I told him they had abused me.

*Thomas Scott*, the husband of the prosecutrix, was called as a witness by the district attorney, and, among other things, the district attorney made the same offer of proof in relation to what afterward occurred as is contained in the evidence of Anna Scott, and the prisoners, by their counsel, interposed the same objections thereto, which were overruled by the court, and the evidence admitted, to which decision the defendants excepted.

Witness said: After Conkey got off the bed, he went to the stove and crushed the pot off, and threw two pieces of meat out of the window; he then threw out the griddle and broke out the window, sash and all.

The district attorney also offered to prove by this witness what he (witness) told and related to Harry Edwards, in relation to the transaction in the morning, to which defendant's counsel objected, upon the ground that the evidence is improper, irrelevant and immaterial, and because the defendants, or either of them, were not present, and upon the same grounds upon which similar evidence was objected to in the testimony of Anna Scott; the court overruled the objections and admit-

ted the evidence, to which ruling and decision the defendants, by their counsel, excepted.

. Witness said: I first told Harry Edwards of what had happened Sunday morning; I sent my boy after him; I did not tell him anything about Conkey getting on the bed, but my wife did; she said that they had abused her so that she could not help about putting up the stove.

The defendants called *Perry Medbury*, who testified: I had heard of Mrs. Scott, previous to that; I am acquainted some in her neighborhood; I think I know how she is generally regarded in New Berlin by some of the people; I have heard some of the people in New Berlin, three or four, speak of her character for chastity.

*Q.* From the speech of people, is her character for chastity good or bad?

This question was objected to by the district attorney, and the evidence excluded, and the objection sustained by the court, to which ruling and decision defendants' counsel excepted.

The witness further said: I don't know how she is generally regarded in the community.

*Stephen P. Cady*, a witness on the part of the People, testified: I reside one and a half miles from where Mrs. Scott lived a year ago; I am a farmer; I have known them part of the time since they lived in Pittsfield; I think I have heard enough to form an opinion. Defendants' counsel objected to this witness giving any opinion or testifying in relation to the character of Mrs. Scott, upon the ground that he has not shown himself competent to do so. The court overruled the objection, and permitted the witness to testify, to which decision the counsel for defendants excepted. Witness says: In my own mind, her character is good.

*Nehemiah Hill*, sworn, said: I live in Pittsfield, about one and half miles from Scott; did when this transaction happened; I don't know as I have the means of knowing about her character for chastity; I think I am prepared to judge. Defendants' counsel objected to this witness giving any opinion

or testifying in relation to her character, upon the ground that he had not shown himself competent to do so. The court overruled said objection, and defendants' counsel excepted. Witness said: I consider it good.

The jury rendered the following verdict: "That they find the prisoners at the bar guilty of the *offense* charged in the indictment." The *record of conviction* recited that the indictment was found by the oaths of *twenty-four* good and lawful men, the grand jury of the county of Otsego.

The defendants removed the record and bill of exceptions into the Supreme Court by writ of error, where the conviction was affirmed by that court at a general term, in the sixth district, held at Binghamton in July, 1860. The defendants sued out a writ of error to this court.

*B. F. Rexford*, for plaintiffs in error.

*E. Countryman* (District Attorney), for defendants in error.

*By the Court*, CLERKE, J. The conduct of the prisoner, Conkey, immediately after the perpetration of the offense was properly admitted. It characterized the whole transaction, showing, or intending to show, that the carnal knowledge, which he had with the woman, was effected under circumstances of violence and threats, calculated to alarm and terrify her. The whole was one continuous act. Nothing is better established than that the prosecutrix, in trials of this nature, may testify as to what she did or said after the commission of the offense. In the language of Sir William Evans (2 *Ev.*, *Pothier*, 289), "Upon accusations for rape, where the forbearance to mention the circumstances for a considerable length of time is, in itself, a reason for imputing fabrication, unless repelled by other considerations, the disclosure made of the fact upon the first proper opportunity after its commission, and the apparent state of mind of the party who has suffered the injury, are always regarded as very material; and the evidence of them is certainly admitted without objection."

Ordinarily, doubtless, what a witness has said out of court

cannot be received to fortify his testimony. The principal
exception is stated in the above quotation. Thomas Scott,
the husband of the woman on whom the offense had been
committed, testified that he first told Edwards the next morn-
ing, relating no part of his story to Edwards, and then
corroborated the statement of his wife, that *she* had complained
to Edwards of the manner in which the defendants had abused
her. Considering the relation he bore to the prosecutrix; that
he was present when she made the disclosure to Edwards, and
that he did not give the details of the conversation with the
latter, his evidence on this point can scarcely be within the
rule disallowing proof of declarations made by a witness out
of court, in corroboration of his main testimony at the trial.

Undoubtedly, on the trial of a person charged with rape,
the character of the prosecutrix for chastity may be impeached
by general evidence. Medbury, a witness called for the de-
fendants, testified that he had heard three or four people in
New Berlin speak of Mrs. Scott's character for chastity, but
did not pretend to know anything of what the people in her
neighborhood said. Cady, a witness called on behalf of the
people, and living in her neighborhood, testified that he had
heard enough to form an opinion, and he knew the impression
of the community was that her character was good.

The witness must be able to state what is generally said of
the person by those among whom he dwells, or with whom he
is chiefly conversant, for it is this only that constitutes general
reputation or character. I think, therefore, that the testimony
of Medbury was properly rejected, and that of Cady properly
admitted.

Nehemiah Hill, living in the neighborhood of Scott and his
wife, first said that he did not know that he had the means of
knowing about her character for chastity, but soon after added,
"I think I am prepared to judge," and concluded by saying
that he considered her character good. The defendants' coun-
sel did not cross-examine him relative to the grounds upon
which, after first hesitating, he stated he was prepared to testify.
We are not to presume that he was not prepared to judge,

from being convinced, on further consideration, that he had sufficient knowledge of her reputation among her neighbors. The jury, at the trial of the indictment, found the following verdict: "That they find the prisoners at the bar guilty of the offense charged in the indictment." The charges in the indictment are: 1st. Rape against Conkey and Herrington; 2d. Rape against Conkey, and against Herrington for assisting Conkey in committing a rape; 3d. Assault and battery against both Conkey and Herrington, with intent to commit rape. It is maintained by the counsel for the defendants that the jury have found the prisoners guilty of every one of these offenses, without specifying which, and, therefore, that the verdict is fatally defective. Although this is not the usual way of rendering a verdict in criminal cases, I can discover no substantial difference between it and the ordinary verdict of guilty. Like the ordinary form, it responds in general terms to the indictment, and this constitutes what is termed a general verdict. If the usual verdict of guilty was the form entered in this case, it would not be pretended that the jury might have intended to find the prisoners guilty of the mere attempt at an offense. When a general verdict of guilty is rendered upon several counts in an indictment, relating to the same transaction, the practice is to pass judgment on the count charging the highest grade of offense. (*Whart. Cr. Law*, p. 1037, sec. 3048; *Harmon* v. *The Commonwealth*, 12 *Serg. & Rawle*, 191.) The verdict is to have a reasonable intendment, and it would be far from reasonable to say, if the jury intended to declare the prisoners guilty of only the inferior grade of the offense charged, that they have not said so, and would not specifically find them guilty of it. To relieve them from the consequences of the higher grade, the jury would unquestionably have employed language expressing that intention, and would have limited their finding to the inferior grade.

The indictment appears on its face to have been presented by the oaths of *twenty-four* good and lawful men, the grand jury of the county, although the statute provides "there shall not be more than twenty-three, nor less than sixteen persons,

sworn on any grand jury." No indictment can be found, without the concurrence of at least twelve grand jurors; thus requiring that at least a majority of the twenty-three should unite in the finding. In the present case, not only twelve, but twenty-three jurors, summoned as grand jurors, united in finding the indictment; the only error committed was, that one more added his suffrage to that of the necessary number. The defendants suffered no injustice from this; it was an imperfection in a matter of form, which did not tend to the prejudice of the defendants; there was a concurrence in the indictment of more than the law requires. At all events, it is now too late to make the objection. The counsel for the defendants neglected to make it before the Court of Oyer and Terminer, and it is too late to set up the objection after conviction and sentence. (*The People* v. *Griffin*, 2 *Barb. R.*, 427.) In *King* v. *Marsh* (1 *Neville & Perry*, 187; 6 *Adolphus & Ellis*, 236; 2 *Bennett & Heard's Leading Cr. Cases*, 317), it was held that "a grand jury ought not to consist of more than twenty-three persons. Where more than twenty-three persons are sworn and sit upon a grand jury, and a bill of indictment is found by them, to which the defendant pleads, and is tried and found guilty, the Court of King's Bench will not, upon *motion*, quash the indictment. If more than twenty-three are sworn and sit upon the grand jury, the defendant, in an indictment found by them, may, if that fact appears upon the caption of the indictment, bring error in law. If it does not appear there, then he may bring error in fact." See also *People* v. *King* (2 *Caines R.*, 98). The error complained of does not amount to a nullity; it, at most, is an irregularity, not capable now of avoiding the conviction.

The judgment of the Supreme Court should be affirmed. As to the irregularity in the constitution of the grand jury, the court proceeded on the ground that the defendants *waived* it, by pleading and proceeding to trial.

Judgment affirmed.