## PEOPLE *v.* BATTERSON.

(*Supreme Court, General Term, Fifth Department.*  October 19, 1888.)

1. RAPE—PRINCIPAL AND ACCESSORY—EVIDENCE—SUFFICIENCY.
    Defendant and three others forcibly separated prosecutrix from her escort, with whom she was walking, and the others committed rape on her person. Defendant admitted that he put his hand on the escort's shoulder, and suggested that he take his girl and go home, and that he knew the intention of the others, but denied taking any further part in the separation, and alleged that he then left. *Held* that, as defendant was present aiding and assisting, his conviction for rape was warranted, though he did not have intercourse with prosecutrix.

2. SAME—INDICTMENT—PLEADING AND PROOF—VARIANCE.
    Pen. Code, N. Y. § 29, defining a principal as "a person concerned in the commission of a crime, whether he directly commits the acts constituting the offense or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces, or procures another to commit a crime," while it embraces as principal what was before known as an accessory before the fact, does not change the form of pleading in cases where a person was principal at common law; and, as defendant's acts would make him a principal at common law, the indictment need not set forth the particular acts showing him to be a principal within the provisions of the statute.

3. SAME—EVIDENCE—RES GESTÆ.
    On trial for rape, while evidence as to prosecutrix's disheveled hair, frightened appearance, red face, and swollen eyes, and of her crying shortly after the occurrence, is competent, the admission of evidence that some days afterwards she threatened suicide is reversible error.[1]

Appeal from court of sessions, Monroe county.

Argued before BARKER, P. J., and HAIGHT, BRADLEY, and DWIGHT, JJ.

*P. Chamberlain,* for appellant.  *George A. Benton,* Dist. Atty., for the People.

HAIGHT, J.   The appellant was indicted jointly with Stephen Adwin, John McKibben, and Dennis Reardon, with having on the 18th day of July, 1886, at the city of Rochester, in and upon one Sophia Kaisar, violently and feloniously made an assault, and her, the said Sophia Kaisar, then and there, against her will, and without her consent, and by forcibly overcoming her resistance, feloniously and forcibly did ravish, carnally know, and have sexual intercourse. It is contended in the first place that the verdict is against the weight of evidence. It appears from the evidence that Sophia Kaisar was at the time unmarried, and was a servant girl in the employ of one Westfall, on Harvard street, in the city of Rochester. That she was keeping company with one George Bahls, whom she subsequently married. That on Sunday evening, the 18th of July, 1886, she went for a walk with Mr. Bahls, through Nicholas park, in that city. That while in the park they met the four persons indicted, who came to them, one saying to Bahls that he wanted him to come with him, and the defendant, Batterson, took hold of the shawl of Miss Kaisar; but that they got away from them at that time, and went on walking in another part of the park. That about a half an hour afterwards the same four persons again came up with them, and McKibben, Reardon, and Batterson took hold of Bahls, one by the throat, the defendant, Batterson, having a club, and pushing from behind, and took him away from the girl, while Adwin took hold of her, and threw her upon the ground. That she

---

[1]As to the admissibility of evidence, on trials for rape, of complaints made by the prosecuting witness, her condition, declarations, etc., see People v. Glover, (Mich.) 38 N. W. Rep. 874, and note; State v. Reid, (Minn.) 39 N. W. Rep. 796.

cried and holloaed, and succeeded in getting up.    Adwin then went off with her a little way, and threw her down again.    She called for George, the police, and tried to get up, but he held her down.    That McKibben and Reardon returned to them, and they held their hands over her mouth, holding her to the ground, while each of the three in turn violated her person.    Bahls, after getting away from the persons who took him away from the girl, went for assistance, and found a policeman; and Reardon was arrested the same evening.    The defendant, Batterson, gave himself up to the police on Tuesday morning, after having remained away from home over Monday night. The only substantial conflict is in the evidence of the defendant, Batterson, who denied that he took part in pushing Bahls away from the girl, but he admits that when they came up with Bahls and the girl that Adwin addressed him by saying, "Officer, do your duty."    That he then put his hand upon the shoulder of Bahls, and said, "Here, my good fellow, you know this is not a fit place for you to do this.    Why don't you take your girl and go home?" That he did nothing further, and then went off home.    He further admitted that he supposed he knew the intention of the other men in following the girl, and supposed that they were going to have intercourse with her.    It is not pretended that the appellant personally had intercourse with the girl, but it is claimed that he was present aiding and assisting the others in accomplishing that crime by forcibly taking from her Mr. Bahls, who was her escort and protector.    We regard the evidence as ample to sustain the verdict upon this theory.

It is contended, in the second place, that there is a variance between the evidence and the indictment; that the indictment should have charged specifically the acts of the defendant, Batterson, which they sought to prove upon the trial as constituting the crime; and the case of *People* v. *Dumar*, 106 N. Y. 502, 13 N. E. Rep. 325, is relied upon to sustain this claim.    It will be observed that the four persons are indicted together as principals.    Section 29 of the Penal Code defines the principal as "a person concerned in the commission of a crime, whether he directly commits the acts constituting the offense, or aids and abets in its commission, and whether present or absent; and a person who directly or indirectly counsels, commands, induces, or procures another to commit a crime," etc.    No question is made but that this provision is broad enough to cover the acts of the defendant, and make him a principal.    But it is claimed that his acts should be set forth showing that he was a principal within the provisions of this section.    While the provisions of the section defining a principal are broader and more comprehensive than the prior statutes, and embrace what was before known as an accessory before the fact, we do not understand it to have changed the form of pleading in the cases where a person was principal at common law or under the statute.    Such we regard the defendant, Batterson.    The crime was commenced when these persons took hold of Bahls and the girl to separate them.    Batterson was then present, and, by taking part in pushing Bahls away from the girl, was aiding and assisting in their separation, so that the other three could have connection with her, and not be prevented by her friend and escort, Bahls.    This would make Batterson a principal at common law as much as though he was present, aiding and assisting burglars in the breaking open of a house, although he did not personally enter.

A more serious question is raised in reference to the admission of evidence. Upon the trial Mrs. Westfall was sworn as a witness on behalf of the people, and gave evidence, as to the condition that Miss Kaisar was in on her return to the house on the evening in question, to the effect that she was very much agitated and excited, and appeared much frightened; that her hair was disordered, her face red, eyes swollen; that she was crying, and continued crying for some time afterwards; she appeared very different from usual, and as though she had something on her mind which was greatly troubling her; that

she cried a great many nights nearly all night long; and then, under objection, testified to her having threatened to take her own life; that before that she was a girl of a very happy disposition and of pleasant manners. The decisions in the different states of the Union are not in exact harmony upon the question here presented. The subject was under consideration in this court in the case of *People* v. *Clemens*, 3 N. Y. Crim. R. 565, in which case many of the authorities are cited and considered. The rule in this state doubtless is that on the trial of an indictment for rape proof of the fact that the prosecutrix make complaint recently after the commission of the offense is competent; while details given by her as to how the offense was committed, and by whom, is not competent as evidence in chief; that it is also competent to show the condition of the prosecutrix, mentally and otherwise, immediately after the offense, in order that the jury may judge more accurately as to the credit that should be given to her testimony. The evidence as to her disheveled hair, her frightened appearance, red face, and swollen eyes, and of her crying, was doubtless competent. The testimony to the effect that she also threatened suicide some days afterwards is going a step beyond the well-authenticated rule. While I am not prepared to say that it was such an error as would make a new trial necessary, my associates are of that opinion. They think it was incompetent, and tended to prejudice the jury against the defendant. *Rex* v. *Clarke*, 2 Starkie, 241; *Baccio* v. *People*, 41 N. Y. 265. No other questions are raised which it is necessary to here consider. The judgment and conviction reversed, and new trial ordered, and the proceedings remitted to the court of sessions of Monroe county to proceed thereon. So ordered.

BARKER, P. J., and BRADLEY, J., concurred. DWIGHT, J., concurred in the result.