# THE NATIONAL BANK OF TROY, APPELLANT, *v.* MARSHALL W. SCRIVEN AND OTHERS, RESPONDENTS.

*Partnership — a general assignment by one partner — his authority — a certificate of acknowledgment — parol evidence — credibility of a witness.*

One partner may execute a general assignment for the firm, if duly authorized so to do by the other partner.

Where a certificate of the acknowledgment of such an assignment fails to state anything as to the authority of the partner who executed it, the officer may testify that the partner executing it stated that he acknowledged it for the copartnership. It is not necessary that the statement as to authority should appear in the certificate.

In an action in which the contest was as to which of two general assignments by the same firm was valid, an attorney testified that he understood that the partner executing the first assignment stated in a certain interview that he had no express authority from the other partner so to do.

*Held,* that, upon cross-examination, he might be asked whether he had not been asked at the time for legal advice as to the legality of the assignments, and whether he had not said that in his opinion the first assignment was valid.

That this was proper as going to the credibility of the witness.

What evidence tends to impeach a witness and is competent, considered.

APPEAL by the plaintiff, the National Bank of Troy, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Rensselaer on the 23d day of July, 1891, dismissing the complaint, separately, as to the defendant Henry W. Smith, and as to the defendant Marshall W. Scriven, after a trial before a referee.

*Frank S. Black,* for the appellant.

*Smith & Wellington* for the respondent Smith.

*George B. Donnan,* for the respondent Scriven.

HERRICK, J.:

Prior to August 1, 1885, Marshall W. Scriven and Elisha W. Hydorn were copartners in trade doing business under the copartnership name of M. W. Scriven & Co., at Troy, N. Y.; on that day a general assignment was made in the name of the copartnership to J. B. Hydorn for the benefit of creditors. Such assignment was executed for the copartnership by Elisha W. Hydorn, he claiming that he had authority from Scriven to make the assignment.

At the time of the assignment the firm of M. W. Scriven & Co. was indebted to the plaintiff to the amount of about fourteen thousand dollars, and in such assignment the plaintiff was made a preferred creditor of the first class by itself. J. B. Hydorn took possession under this assignment, but never filed a bond.

On the 7th of August, 1885, the said Scriven and Hydorn made a second general assignment for the benefit of creditors, executed by each partner personally to the defendant Henry W. Smith.

Smith filed a bond and took possession under this second assignment, the assignee under the first assignment giving the property up to him. Smith converted the property into money, and is now ready to distribute it. In their second assignment the plaintiff is placed in the second class of creditors with a number of others, and will apparently, if the second assignment stands, receive very little upon its claim.

The plaintiff did not know of or consent to the second assignment, and has not in any way waived its rights under the first assignment. It requested the first assignee, J. B. Hydorn, to take proceedings to enforce his title as such assignee, to discharge the duties of his trust, and to protect the rights of the plaintiff under such assignment; this he failed and refused to do, and the plaintiff, having in the meantime procured judgment upon its claim and the execution thereon being returned unsatisfied, commenced this action, in its own behalf, to enforce said first assignment, asking, among other things, "that said assignment of August first be declared valid, and be carried out so far as to pay.plaintiff's claim in full."

It is claimed, upon the part of the defendants and respondents, that the first assignment was not legally executed.

That a general assignment for the benefit of creditors may be legally executed by one of the members of a copartnership, of all the partnership assets, when he is fully authorized to do so by the remaining copartner or copartners, is too well settled to require discussion. (*Hooper* v. *Baillie et al.*, 118 N. Y., 413.)

In this case the assignment recites that it is an indenture made by and between Marshall W. Scriven and Elisha W. Hydorn, copartners doing business under the firm name and style of M. W. Scriven & Co., and it is signed: "MARSHALL W. SCRIVEN, ELISHA W. HYDORN. By Elisha W. Hydorn."

The certificate of acknowledgment recites that Elisha W. Hydorn and J. Bartlett Hydorn (the assignee) came before the justice taking the acknowledgment; that the justice knew them to be the same persons mentioned and described in the foregoing instrument, and that they severally acknowledged before him that they executed the same.

The sufficiency of this certificate is challenged, because there is no statement in the certificate that Elisha W. Hydorn was authorized to sign Scriven's name. This I do not think necessary; if he was authorized by the firm it was sufficient. (*Hooper* v. *Baillie,* 118 N. Y., 413–416.) If he had authority to execute the assignment of the firm property, he had authority to execute it in the name of the firm and by himself, and to acknowledge it as such. (*Klumpp* v. *Gardner,* 114 N. Y., 153–160.) It appears from the testimony of the justice of the peace who took the acknowledgment that Elisha W. Hydorn stated that he acknowledged it for the copartnership; that was a sufficient acknowledgment within the case of *Hooper* v. *Baillie;* and if the officer omitted to embody it in his certificate, that defect, if it is one, may be cured by evidence as to what did take place and as to what the acknowledgment really was. The policy of the law is to uphold the certificate when the substance is in it. (See *Claflin* v. *Smith,* 15 Abb. N. C., 241, and cases cited; *Kelly* v. *Calhoun,* 95 U. S., 710.)

The officer taking the acknowledgment could be compelled to correct a mistake in the certificate and make it conform to the facts. (Am. and Eng. Encyclopœdia of Law, 149, and cases cited.) His testimony as to what took place before him is uncontradicted; that, as we have seen, was a sufficient acknowledgment in behalf of the copartnership; if it was a necessary part of the certificate he could be compelled to insert it; and it now appearing in the case, it seems to me that the instrument was sufficiently acknowledged within the statute and properly executed, if, in fact, Elisha W. Hydorn was authorized by his copartner to make an assignment for the benefit of creditors. That question was sharply contested and is the most important question in the case.

Without entering into any general discussion of the evidence, or as to what it tended to show, it seems to me that errors were com-

mitted in the reception and rejection of evidence bearing upon that question, for which the judgment should be reversed. As we have seen, the most important question in the case is as to whether Hydorn was authorized by Scriven to make the assignment; that question in turn depended to a large extent upon the testimony of Hydorn, and, consequently, upon his credibility as a witness.

Upon the question of authority one Samuel Foster was called as a witness for the defendants and testified, among other things, that after the first assignment, and before the second, he had a conversation with Elisha W. Hydorn in reference to the first assignment, at which Mr. Scriven and others were present, and at which not only did Mr. Scriven deny that he had authorized Hydorn to execute the assignment, but Hydorn conceded that Scriven had not authorized him, but supposed he would not object; and also stated, after giving details of the conversation, that "there was considerable more said at that conversation to the same effect; and Mr. Smith and I, both distinctly understanding from the statement of Hydorn and Scriven that the first assignment had been made by Hydorn without the authority or consent of Scriven, advised the making of the second assignment, which was accordingly done."

Upon the cross-examination the question was asked of the witness as to whether his legal advice or opinion was there asked as to whether said second assignment was illegal and invalid as to plaintiff, because of the existence of the first, as to which he answered "Yes." He was then asked: "Did you then, as an attorney at law, give as your advice or opinion that said first assignment was legal and valid, and that the second was illegal and invalid as to this plaintiff?" This was objected to by the defendant as incompetent, and the objection sustained. Again he was asked: "Did you then give it as your opinion and advice as an attorney at law that an action in behalf of this plaintiff to establish the first assignment as valid, and declaring the second assignment void, could be successfully maintained?" This question was also objected to by the defendants, and the objection sustained.

Several other questions of the same character and tendency were asked by the plaintiff, objected to by the defendants, and the objections sustained. The questions were asked for the purpose of affecting the credibility of the witness, and for the purpose of show-

ing that the witness' acts and statements were inconsistent with his answers upon the direct-examination, and as tending to impeach his testimony given upon his direct-examination. I think the questions were competent for the purpose indicated. Acts, conduct or statements inconsistent or conflicting with the testimony of a witness on direct-examination are competent. (*Homer* v. *Everett,* 91 N. Y., 641.)

Evidence was also given to impeach Elisha W. Hydorn, and the plaintiff gave evidence to sustain him. The court limited the number of witnesses on each side. Among other witnesses called by the plaintiff was Edward J. McKenna, who was asked : " Did you ever hear him spoken of as to his reputation for truth and veracity ? A. No, sir. Q. Or his honesty ? A. Always considered it good ; I never heard it discussed."

On motion of the defendants this last answer was stricken out. The witness further testified that he had known Hydorn thirteen or fourteen years ; that he had heard him talked about politically ; had done business with him ; knew his associates ; only knew his reputation for truth and veracity from personal knowledge ; never heard it talked about except politically. He was then asked : " Q. From your knowledge, based upon the facts which I have questioned you about, would you believe him under oath ? " This was objected to by the defendants as incompetent, and the objection was sustained.

These rulings, I think, were erroneous ; the reasons therefor are sufficiently set forth in *People* v. *Davis* (21 Wend., 309, 316) and *Adams* v. *Greenwich Insurance Company* (70 N. Y., 166, 170), without repeating them here.

For the causes herein set forth the judgment should be reversed, a new trial granted, the referee discharged, with costs to abide the event.

PUTNAM, J., concurred ; MAYHAM, P. J., not sitting.

Judgment reversed, new trial granted, referee discharged, costs to abide event.