## PEOPLE v. GOLDBERG.

(Supreme Court, Appellate Division, First Department. August 4, 1897.)

SHOPLIFTING—EVIDENCE.

In a prosecution for shoplifting, the only evidence against defendant was that of the private detective of the store, who testified that she saw defendant take up a 98-cent cotton umbrella, tear the tag off, partially conceal the umbrella, and start out of the store. Defendant accounted for all her movements on that day in detail, and it appeared that she went into the store accompanied by her sister; that she purchased and paid for some embroidery, and then, taking up her parcels, including things she had gotten at other stores, started out, taking by mistake the umbrella in question, and leaving her own (a silk one) on the counter. When searched no other stolen goods were found on her. It also appeared that she was a married woman, of excellent character and reputation. *Held*, that the evidence did not warrant a conviction.

Appeal from special term, New York county.

Dora Goldberg was convicted of petit larceny, and appeals. Reversed.

Argued before RUMSEY, WILLIAMS, PATTERSON, and PARKER, JJ.

David Leventritt, for appellant.
John D. Lindsay, for respondent.

PARKER, J. Section 527 of the Code of Criminal Procedure makes it the duty of this court to "order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall be taken or not in the court below." In the performance of that duty, we are led to order a new trial for the defendant, because we are firmly convinced that she ought not to have been convicted on the evidence before the court. The defendant, who had been a married woman for some 18 years, and was the mother of three children, left her residence in Brooklyn, where she had lived some 10 years, on the 30th day of January, 1897, to do some errands in the city of New York. She was accompanied by her sister, who was also a married woman, living next door. Their husbands were both in the real-estate business. It was a cloudy day, and the defendant took with her an umbrella. Their first stopping place was No. 1 Great Jones street, where the defendant had some dental work done by Dr. Kunz. The doctor had been accustomed to do the dental work of the defendant and her family for about 10 years. Subsequently they went to Cammeyer's shoe store on Sixth avenue, where both sisters made some purchases of shoes. The defendant concluded to carry her purchases, as she wanted to make use of them the next day, but her sister had hers delivered. Then they went across the street to O'Neil's to purchase some embroidery, and the defendant went direct to the embroidery counter, and called for 25 yards of that material; but as there happened to be but 26½ yards in the piece that was shown her, she took the entire piece, paying for 26 yards. While she was examining the embroidery and paying for it, her packages were lying on the coun-

ter, and her sister was standing in her immediate vicinity. The embroidery being paid for, she took up her bundles, and also an umbrella, and, accompanied by her sister, passed out of the door, which was but a few feet from the counter where she had done her trading. The umbrella, however, was not hers, but O'Neil's. Hers was a silk umbrella, with a handle finished more perfectly than the 98-cent cotton umbrella of O'Neil's. Did she steal this umbrella, or was its taking a mere inadvertence? According to the defendant's testimony, when she passed out of the door she asked her sister to help her with her parcels, and then discovered that the umbrella was not hers, and at once she said to her sister, "Look, Eva, this is not my umbrella," and at that moment O'Neil's detective placed her hand upon her shoulder, and, pointing to the umbrella, said, "You stole that." She was arrested, and taken to the Nineteenth precinct station, where the matron was requested to search her. The matron testified that she searched for shoplifters' bags, etc., but found only a small pocket in her cape, and that she gave her a thorough search, but found only a pair of shoes with Cammeyer's wrapper on them, and 25 yards of embroidery, with a paid ticket at 25 cents per yard. The people, to establish the charge of larceny, called one witness, a Miss Eltoft, who was a private detective at O'Neil's, and who testified as follows:

"I saw her take an umbrella from the umbrella rack. I saw her slip it down by her side and take the tag off it, and then slip it under her cape as far as she could get it, and walk a little ways down the aisle. She met another woman, whom I afterwards learned was her sister. They had been looking at some goods. They left the store. I followed her a little south. I requested her to return to the store with me. She had the umbrella with her when I followed her on the street."

This witness also testified that the place from which the umbrella was taken was not the umbrella department, but that between the lace counter and the embroidery counter stood a rack in which umbrellas were kept, and that it was from this rack that the umbrella was taken. No one was called to support her testimony. This detective's testimony has no other support, except in the fact that the umbrella was carried out of the store by the defendant. The defendant denied taking any umbrella out of the rack, or removing a tag from the umbrella, or that she saw a rack of umbrellas. She said that when she entered the store to purchase the embroidery the first counter she came to after passing through the door was the embroidery counter; that she made her purchase, and, while selecting it, laid her parcels upon the counter; that, after the embroidery was done up and paid for, she picked up the bundles and the umbrella, which she supposed was the one she left home with that morning, and that the umbrella was leaning up against the counter, right where her parcels were, and it was the only umbrella she saw in the store; that she first discovered her mistake when handing a portion of her parcels to her sister, to whom she said, "Look, Eva, this is not my umbrella," and at that moment the detective took it from her hand, accusing her of stealing it. Her sister corroborated her story as to the time when they left home, and as to all

the main occurrences of the day, and insisted that, if her sister had removed the tag from any umbrella in that store, she would have seen it, and that she did not. She also testified that the defendant did not leave the embroidery counter and go to any other part of the store. She also corroborates her sister's statement that, a moment before being accosted by the detective and charged with stealing the umbrella, the defendant said to her, "Look, I have taken an umbrella." There are men and women in every community whose word, were they placed in a similar situation to the defendant, would be accepted unhesitatingly as against such testimony as the people produced on this trial. Their reputations are so firmly established in the community in which they live that the charge that they had taken a tag off of a 98-cent cotton umbrella, and secreted it partially under an outer garment, would not be believed, although several detectives should testify to it. In the administration of criminal law the courts have ever attached the utmost importance to evidence of good character. "Evidence of good character is not only of value in doubtful cases and in prosecution of minor offenses, but is entitled to be considered when the crime charged is atrocious, and also when the testimony tends very strongly to establish the guilt of the accused. It will sometimes of itself create a doubt when without it none would exist." Cancemi v. People, 16 N. Y. 501; Stephens v. People, 4 Parker, Cr. R. 396; Com. v. Webster, 5 Cush. 295. "No matter how conclusive the other testimony may appear to be, the character of the accused may be such as to create a doubt in the minds of the jury, and lead them to believe, in view of the improbabilities that a person of such character would be guilty of the offense charged, that the other evidence in the case is false or the witnesses mistaken." Remsen v. People, 43 N. Y. 6. The defendant attempted to show by the method pointed out by law that she was a woman of good character, bearing a good reputation among her neighbors and acquaintances. A merchant in whose employ she was for five years immediately preceding her marriage supported in strongest terms her reputation for truth, honesty, and veracity. A captain of police, in whose precinct the defendant lived, and who had special opportunities for hearing the speech of people, not only asserted that her reputation for truth, veracity, and honesty was of the best, but that she was held in esteem and regard by her neighbors, and was charitably inclined. The pastor of the First Congregational Church of Jamaica, who had known the defendant for some nine or ten years, and lived in her vicinity, testified that her reputation was first class. The defendant, continuing with this line of testimony, called a Mrs. Anderson, and, after she was sworn, the court said:

"Do you intend to prove character by this witness? Counsel: I do. The Court: Don't you think you have gone far enough with the question of character? We think we have enough on the subject, except the prosecution attacks it, and then they are to inform you of that."

Here was plainly an intimation from the court that as the evidence stood the defendant had established that she was a woman of good character, and that her reputation for honesty and veracity

was so firmly grounded that it was unnecessary for her to call other witnesses to support it. The court was right in that conclusion. It was supported by the testimony of one who had watched her during her early girlhood, and for five years, in a situation where many have failed to resist temptation, and by the testimony of those who knew of her walk in life while discharging the important responsibilities which fall upon a mother of several children. And against it there is not a whisper, except the testimony of a detective that she tore a tag off of an umbrella which a woman in her position would hardly be seen carrying in the streets, and the circumstance that the umbrella was in her possession when she stepped out of the door. Giving to her good character the weight to which it was entitled in a case like this, and considering the defendant's testimony and that of her sister in the light of all the circumstances surrounding the occurrence, including their movements on that day, we reach the conclusion that a conviction ought not to have been had.

The judgment of conviction should be reversed, and a new trial ordered. All concur.