(62 App. Div. 357.)

PEOPLE v. SELDNER.

(Supreme Court, Appellate Division, First Department. June 21, 1901.)

1. LARCENY—ACCOMPLICE—INDICTMENT—SUFFICIENCY.
     An indictment which charged M. and C. with larceny, and that defendant at the time was then and there willfully and feloniously concerned in committing the crime, and did then and there aid and abet in its commission, and, in the manner and form aforesaid, did then and there steal the property of E., was not insufficient as to defendant, in failing to specify the means by which he aided and abetted.

2. SAME—EVIDENCE—ADMISSIBILITY.
     Defendant, who was an attorney, was charged with aiding and abetting other parties in committing larceny, by executing a deed conveying

property which the grantor did not own; and the state claimed that defendant represented to the grantee that he examined the title, and found a good title in the grantor. Defendant testified that he represented that an abstract furnished by the grantor appeared to give him a good title. *Held*, that the abstract was admissible to show the absence of criminal intent.

3. SAME—GOOD CHARACTER—PROOF.

Where witnesses knew defendant, and had conversed with his associates and acquaintances concerning his character, evidence of such witnesses as to defendant's reputation for honesty in the community in which he lived was not objectionable on the ground that no sufficient foundation was laid for its admission.

Appeal from court of general sessions, New York county.

Henry Seldner was convicted of larceny, and he appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and LAUGHLIN, JJ.

Benjamin Franklin, for appellant.
C. E. Le Barbier, for the People.

LAUGHLIN, J. Defendant was indicted jointly with Alexander Muller and Herman Cohen, but he was tried separately. The sufficiency of the indictment as to Muller and Cohen is not questioned by appellant. The indictment charges Muller and Cohen, in substance, with having obtained from one Engisch, the complaining witness, a deed, containing a covenant of warranty, of property situated at No. 1014 Avenue A, in the city of New York, being a five-story apartment house, the lower floor of which was fitted up and used as a saloon, together with the saloon fixtures, liquor-tax certificate, stock, furniture, and appurtenances to the property, on the strength of certain false and fraudulent representations to the effect that Muller was a man of wealth and the owner of certain lots on Staten Island and other lands, and with the aid of a pretended abstract of title, and a pretended satisfaction piece of a mortgage, and a pretended deed purporting to convey to said Engisch the said lots on Staten Island, knowing the same to be false and pretended. The indictment then charges that Seldner at the time of the committing of the felony and larceny therein above described "was then and there willfully and feloniously concerned in the commission of the same, and did then and there willfully and feloniously aid and abet in the commission of the said larceny and felony." The indictment closes with the charge that the three defendants (naming them), "in the manner and form aforesaid, by the means aforesaid, the said property, goods, chattels, and personal property of the said Christian Engisch then and there feloniously did steal, against the form of the statute in such case made and provided," etc.

The first question raised by the appellant relates to the sufficiency of the indictment as against him. At the commencement of the trial the attention of the court was drawn by defendant's counsel to the form of the indictment, and the claim was made that defendant was only called upon to answer for having aided and abetted, and that evidence as to conversations between the other defendants and

Engisch was not admissible against appellant. At the close of the people's case, defendant's counsel moved for a direction of a verdict of acquittal, stating that there was considerable variance between the proof and the indictment; but no ruling appears in the record, and no exception is shown to have been taken. Before sentence a motion was made for a new trial and in arrest of judgment, but no grounds are stated in the record. It would appear, therefore, that no objection to the sufficiency of the indictment was made upon the trial. We think the indictment was sufficient. The last clause quoted expressly charges the three defendants with the commission of the crime in the manner and by the means previously set forth in the indictment. This indictment is substantially in the form in use at common law against principals and accessories before the fact. Under the common-law practice, it was not necessary that an indictment charging one with being an accessory before the fact should specify the means by which he aided and abetted in the commission of the crime. 1 Chit. Cr. Law, p. *272; Bish. Directions & Forms, §§ 113, 114, 116. In People v. Welden, 111 N. Y. 569, 19 N. E. 279, the court say, "It is generally sufficient to state an offense in the language of the statute defining the crime." The same doctrine is announced in People v. West, 106 N. Y. 293, 12 N. E. 610, and in Phelps v. People, 72 N. Y. 334. Pen. Code, § 29, makes all accessories before the fact principals, and the indictment follows the language of the statute. Code Cr. Proc. §§ 276, 284, 285, prescribe the form of indictments, and were intended to simplify, rather than amplify, the technical requirements of an indictment. This indictment was sufficient to warrant the conviction of appellant as a principal. It was not necessary to plead the evidence which the people claim constituted aiding and abetting the other defendants in the commission of the felony charged against them. The facts constituting the crime were fully stated. The evidence by which the people proposed to connect defendant with it is not set forth, but the facts are stated according to their legal effect. The words "aided and abetted" and "concerned in" have a well-defined legal meaning, and, as used in this indictment, they charge appellant with having counseled, assisted, and encouraged the other defendant in the commission of every act constituting the crime. The facts constituting the crime committed by the other defendants having been sufficiently set forth, it was sufficient to charge defendant with having been willfully and feloniously concerned in, and with having willfully and feloniously aided them in, the commission of that crime. People v. Bliven, 112 N. Y. 79, 19 N. E. 638; People v. Batterson, 50 Hun, 44, 2 N. Y. Supp. 376; People v. Bosworth, 64 Hun, 72, 19 N. Y. Supp. 114; People v. Fitzgerald, 156 N. Y. 253, 257, 50 N. E. 846; People v. Kief, 126 N. Y. 661, 27 N. E. 556; People v. Willis, 158 N. Y. 392, 398, 399, 53 N. E. 29; People v. Kelly, 11 App. Div. 495, 496, 42 N. Y. Supp. 756; People v. Peckens, 153 N. Y. 576–587, 47 N. E. 883. In People v. Bliven, supra, the court held, pursuant to the purpose of the new procedure, that an indictment in form as against a principal was sufficient to sustain a conviction for aiding and abetting in the commission of the crime, and ex-

pressly repudiated the theory that the accused was not fairly apprised by the indictment of the charge to be presented against him. This case reviews the authorities upon the subject both in this and other jurisdictions, and the necessary deduction therefrom is, I think, that, if the facts constituting the crime are alleged, it is not necessary to allege the acts and things which it will be claimed constitute the aiding and abetting.

Upon the trial, however, errors were committed to the substantial prejudice of the defendant, which necessitate the granting of a new trial. He was an attorney and counselor. The defendant Cohen was a real-estate broker who negotiated the exchange of properties. Muller was the pretended owner of the Staten Island property given to Engisch in exchange. The crime of grand larceny in the first degree is defined in sections 528 and 530 of the Penal Code. Intent to wrongfully deprive or defraud the true owner of his property is an essential element of the crime. The people gave evidence tending to show that Seldner represented to Engisch, in the presence of Muller and Cohen, that he had made a search of the title to the Staten Island lots, and found good title thereto in Muller; that he exhibited to him an abstract of the same, and also a pretended satisfaction piece of a mortgage thereon; and that he urged Engisch to act upon his representations with reference to the condition of the title, without employing a lawyer. Muller was not in possession, and he did not have a good record title. The abstract referred to was made by the county clerk of Richmond county, and it showed an unbroken chain of title in Muller and his grantors, running back to letters patent by the captain general and governor in chief of New York and New Jersey issued to Lancaster Symes in 1708. In truth, however, Muller had no title. The original grant in his chain of title did not describe the lands conveyed. It merely granted, in general terms, vacant lands and meadows on Staten Island; but the lands in question had been previously specifically granted by the lieutenant governor and vice admiral of the Duke of York to John Palmer. This was part of the tract known as the "Dongan Grant." Defendant took the stand in his own behalf, and testified that his only connection with the transaction was the examination of this search, and a representation that the search appeared to give Muller a good title; that he drew for Cohen and Muller the formal parts of the satisfaction piece referred to, leaving blanks for the date, liber, and page of record, but that he had no connection with its execution; that he did not represent to Engisch that he had made a personal examination of the title, or do or say anything to induce Engisch to rely upon his representations with reference to the condition of the title. The defendant repeatedly offered in evidence the abstract of title with reference to which alone, according to his testimony, his advice was given. Upon the general objection of the district attorney, the court excluded the abstract. It was competent evidence, as it tended, in connection with his testimony, to show absence of criminal intent. If the testimony of the defendant had been believed by the jury, they would have been justified in acquitting him of the crime.

Other serious reversible errors were committed in the exclusion of evidence offered by defendant to show previous good character and reputation for honesty and integrity. Senator Cantor was called, and after testifying that he had known defendant since 1881 or 1882; that he and defendant were law partners for five or six years; that he saw defendant nearly every day for a long time, and knew all of defendant's family, and knew people who were acquainted with him, and who lived in his vicinity, and had heard him spoken of in the neighborhood where he resided,—was asked, "Could you tell, from the conversations you have had, what his reputation is as to honesty and integrity?" The record shows that this was objected to generally, sustained, and an exception. The witness was then asked, "From your acquaintance with people who knew him and who lived in his vicinity, can you tell what his reputation is as to honesty and integrity?" To this question a general objection was also interposed, sustained, and an exception taken by defendant's counsel. Another witness—Dornbusch, a contractor, who knew defendant well, and was acquainted with some people who knew him, and had spoken to people concerning him, and had been spoken to by people concerning defendant—was asked, "In the vicinity where he lives and associates, what is his character among them?" This was objected to, objection sustained, and defendant excepted. Witness then testified that he had seen defendant nearly every day for the last two years, and was asked, "How is he spoken of by those people who know him?" This was also excluded, under a similar objection, and defendant excepted. Witness was then asked, "Can you tell what his character is as to truth, veracity, and integrity?" This was similarly excluded, and defendant excepted. Another witness—Elliott, who had known defendant for 15 years, and had been acquainted with a great many people who knew him, and had conversed with them concerning him—was asked, separately, what defendant's reputation was among those people; what his reputation as to honesty and integrity among the people who knew him; what was his reputation, good or bad; what was his reputation among the people who knew and were acquainted with him; all of which questions were objected to generally, the objection sustained, and defendant excepted. There was a sharp question of fact presented by the evidence in this case, depending upon the credibility of the people's witnesses, or of the defendant. In these circumstances, evidence of previous good character might have resulted in a different verdict. It is now well settled that such evidence may, in and of itself, raise a reasonable doubt which would warrant the jury in acquitting a defendant, no matter how strong the evidence against him may be. People v. Goldberg, 20 App. Div. 444, 46 N. Y. Supp. 913; People v. Sweeney, 133 N. Y. 609, 30 N. E. 1005; Stover v. People, 56 N. Y. 315; People v. Friedland, 2 App. Div. 332, 37 N. Y. Supp. 974; Remsen v. People, 43 N. Y. 6; People v. Wilcman, 44 Hun, 187. The rule that evidence to impeach a party or witness may be excluded unless it be shown that the impeaching witness knows the general reputation of the party or witness sought to be impeached, from the speech of people who are acquainted with him in the community where he resides or transacts business (Carlson v.

Winterson, 147 N. Y. 652, 42 N. E. 347; Healey v. Terry [Com. Pl.]
9 N. Y. Supp. 519), is not applied to witnesses called to establish
or sustain character (Bank v. Scriven, 63 Hun, 375, 18 N. Y. Supp.
277; Adams v. Insurance Co., 70 N. Y. 166; People v. Davis, 21
Wend. 309; Conkey v. People, 5 Parker, Cr. R. 31; Lenox v. Fuller,
39 Mich. 268; State v. Sterrett, 68 Iowa, 76, 25 N. W. 936; State v.
Grate, 68 Mo. 22; State v. Lee, 22 Minn. 407; Cole v. State, 59 Ark.
50, 26 S. W. 377; Lemons v. State, 4 W. Va. 755, 6 Am. Rep. 293;
Gandolfo v. State, 11 Ohio St. 114). Within these authorities, this
evidence was competent, and should have been received. The charge
involved defendant's honesty. It was pertinent to the issue, there-
fore, for defendant to show good reputation for honesty and in-
tegrity. Whart. Cr. Ev. §§ 60, 487; Abb. Tr. Brief, Cr. § 461;
Underh. Cr. Ev. § 77; State v. Bloom, 68 Ind. 54, 34 Am. Rep. 247.

The attitude of the court throughout the trial, towards the de-
fendant, is complained of; and other exceptions, relating to remarks
of the assistant district attorney, relating to the exclusion of evi-
dence concerning the bringing of an action by Engisch against
Muller and Cohen to recover damages for fraud in inducing the trade,
and relating to what the New York property brought on a sale at
public auction, as bearing upon its value, are urged upon our atten-
tion as constituting cause for reversal. The exceptions already
considered at length necessitate a reversal, and render it unneces-
sary for us to definitely decide whether the other exceptions and er-
rors complained of, but which, it may be observed, are not wholly
without merit, would be fatal to the conviction, and upon the new
trial they will doubtless be avoided.

The conviction and judgment should be reversed, and a new trial
granted. All concur; VAN BRUNT, P. J., and McLAUGHLIN, J.,
in result.