(118 App. Div. 511, 913)

### PEOPLE v. VAN GAASBECK.

(Supreme Court, Appellate Division, Third Department. March 13, 1907.)

HOMICIDE—EVIDENCE—DEFENDANT'S GOOD REPUTATION—ADMISSIBILITY.

In a murder trial, evidence of defendant's peaceable and quiet disposition in a town where he lived many years before moving to the town where the homicide occurred, five or six years previously, was admissible, though the remoteness of the time and place might weaken the testimony, since evidence of good reputation might of itself create a reasonable doubt as to his guilt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, § 310.]

Appeal from Ulster County Court.

Cornell Van Gaasbeck was convicted of manslaughter in the first degree, and he appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Augustus H. Van Buren, for appellant.

Frederick Stephan, Jr., Dist. Atty. (Howard Chipp, of counsel), for respondent.

JOHN M. KELLOGG, J. The crime was committed in the town of Woodstock where the defendant was born. For the last five or

six years before the trial he had lived in that town, but prior to that time he had resided for many years in the city of Kingston, and was well known there.

One Merritt, who resided in the city of Kingston, swore that he had known the defendant for 25 or 30 years; that defendant had worked on his farm for him, on and off, three or four or five years, whenever he wanted extra help; he was acquainted with the reputation and character of the defendant, so far as relates to whether or not he is of a quiet and peaceable disposition or otherwise. To the question as to what his reputation is, the objection that no proper foundation had been laid for the proof, and that it was not a proper way to show character was sustained, and the defendant excepted. A policeman of the city of Kingston for the last 19 years had known the defendant for 30 years, knew him whenever he was in the city, and knew his character as to being a peaceable and quiet man. To the question as to what the character is, the same objection was sustained, and the defendant excepted. This evidence probably related to the reputation of the defendant at Kingston, and not in the town of Woodstock. The remoteness of time and place might weaken the testimony, but the fact that the man, by living at Kingston many years before, and up to five or six years before the trial, had established a reputation for peaceableness and quietness, was some evidence that that character had continued, especially in the case of a man 55 years of age. Sleeper v. Van Middlesworth, 4 Denio, 431; Graham v. Chrystal, *41 N. Y. 21, correctly reported in 2 Abb. Dec. 264.

When it is sought to impeach a witness for truth and veracity, the proper inquiry is as to his general reputation. Carlson v. Winterson, 147 N. Y. 652, 42 N. E. 347. But the cases seem to permit the inquiry as to his reputation for truth and veracity without inquiring as to his general reputation. And while perhaps his general reputation in other respects may be involved, it is clear that the question aimed solely at truth and veracity is the most logical one. A man's reputation may be so good in all other respects that small lapses in regard to truth may leave a balance on the side of a good reputation. His general reputation, therefore, may not give the same definite information as to his truthfulness as a direct inquiry on that subject. A known gambler has not a good reputation, but he may have an excellent reputation for truth and veracity. If a man is on trial for murder, the fact that he is truthful has little bearing upon the probability of his guilt. If the charge is forgery, his reputation as a moral man has little bearing upon that question. This defendant was on trial for killing his best friend, and the principal evidence of his connection with the crime was the fact that the deceased had been at defendant's cabin for some days, that they were more or less drunk, and that the deceased was found dead in the cabin, with other circumstances connecting the defendant more or less with the offense. Nobody knows just what caused the act, but it may fairly be inferred to have been a brutal, cold-blooded murder. The assailant left the deceased in an unconscious and dying condition, and he died several hours after. If the 55 years of life of the defendant had given him among

the people who knew him best a reputation as a quiet and peaceable man it might, in the minds of the jury, have some bearing upon the question whether he was guilty of the brutal murder of his friend.

While the books are full of statements that the defendant may show his good character from general reputation, the authorities are not entirely clear in this state that the good character and the general reputation means a general good character or his general reputation in the respects which relate to the trial—the qualities of his character which are challenged by accusing him of the crime. Wharton states the general rule as follows:

"And the character he is entitled to prove must be such as would make it unlikely that he would be guilty of the particular crime with which he is charged." Wharton's Cr. Evidence (8th Ed.) § 60.

"The evidence of good character offered by the accused must relate particularly to that trait of character which is involved in the crime charged, so that the proof of good character will render it unlikely that he would be guilty of that particular crime." 12 Cyc. 413.

In People v. Seldner, 62 App. Div. 357–363, 71 N. Y. Supp. 35, the defendant was on trial for grand larceny, and several witnesses were asked if they knew the reputation of the defendant for honesty and integrity, the court remarking that while impeaching witnesses to attack a man's character must show a knowledge of his general reputation, that where the defendant called witnesses to show his good character, as evidence on the merits, the same rule did not apply, and the judgment was reversed for the exclusion of testimony as to the defendant's character for honesty and integrity, the court saying:

"The charge involved defendant's honesty; it was pertinent to the issue, therefore, for defendant to show good reputation for honesty and integrity" —citing Wharton, supra, and other authorities.

The question here is not whether the character inquired about must relate to the traits involved in the alleged crime, as suggested by the authorities above cited, but may the inquiry relate to the qualities involved in the crime—not whether the inquiry must relate to character for peaceableness or quietness, but, in a case like this, may it relate to such reputation? A man on trial for a crime may have many traits of character which he may not desire to discuss before the jury; but if there is a redeeming feature in his character, and that feature points to the improbability of his having committed the crime, it would seem that he is entitled to the benefit of the evidence. A bad character for truth and veracity, for morality, and in other respects, does not make the person burdened with it an outlaw; but when he is accused of crime he may show that his reputation is such among the people who know him best as to render it improbable that he would be guilty of the particular crime charged against him. Evidence of good character may of itself create a reasonable doubt, when without it none would exist. People v. Bonier, 179 N. Y. 315, 72 N. E. 226, 103 Am. St. Rep. 880.

Conviction and judgment reversed on the law, and new trial ordered in the County Court of Ulster county; the court having examined the facts and found no error therein. All concur.