THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH HEAL, Relator, against JOHN F. FOSTER, as Warden of Auburn State Prison, Defendant.

Supreme Court, Special Term, Monroe County, October 15, 1949.

*Nathaniel L. Goldstein, Attorney-General (William S. Elder, Jr., of counsel),* for defendant.

*George M. Michaels* for relator.

GILBERT, J. Joseph Heal petitioning herein for a writ of habeas corpus is an inmate of Auburn State Prison, and is serving a term of thirty years for the crime of robbery first degree. He contends that he is illegally restrained of his liberty because the Grand Jury that brought in the indictment was composed of twenty-four members instead of the statutory twenty-three. (Code Crim. Pro., § 224.)

In its simplest form the relator claims that the statute is mandatory in requiring a grand jury to consist of not less than sixteen, not more than twenty-three " good and lawful men "; that a grand jury otherwise constituted is not a "legal " grand jury and, as such, without power to indict; that he was not indicted by a legal grand jury; that the indictment was invalid; that the " people " therefore had no jurisdiction over him to " try " him; that the judgment of conviction is void; that his constitutional due process prerogatives have been violated, and finally that he should therefore be freed from his imprisonment.

Thus, if the facts are true, a serious question is before the court. This is not just a clever means of being released from prison, based on an absurd technicality. In passing on the legality of this Grand Jury the court is dealing with " the integrity of a public judicial institution, probably the oldest in existence, and with the protection thereunder of important private rights." (*People* v. *Prior,* 294 N. Y. 405, 418.)

The grand jury system, first evolved was a bulwark against an oppressive king. Today it protects our citizens, high and low, great and small, from unwarranted accusations, and the " right " is preserved inviolate by our Federal and State constitutions.

The statute defines the grand jury. It "must consist of not less than sixteen and not more than twenty-three persons * * *." (Code Crim. Pro., § 224.) The statute provides for the method of selecting the grand jurors (Code Crim. Pro., § 229) and the qualifications (Code Crim. Pro., § 229-b). In fact the code defines, delimits, regulates, and prescribes the exact procedures to be followed with every grand jury, and the sacredness of the body compels complete compliance with the law.

This is not a new or unique question. Still law on the matter is the Court of Appeals case, *Conkey* v. *People* (1 Abb. Ct. App. 418, 422–423). There the court said:

"The indictment appears on its face to have been presented by the oaths of *twenty-four* good and lawful men, the grand jury of the county; although the statute provides 'there shall not be more than twenty-three, nor less than sixteen persons sworn on any grand jury.' No indictment can be found without the concurrence of at least twelve grand jurors; thus requiring that at least a majority of the twenty-three should unite in the finding. In the present case, not only twelve, but twenty-three jurors, summoned as grand jurors, united in finding the indictment; the only error committed was, that one more added his suffrage to that of the necessary number. The defendants suffered no injustice from this; it was an imperfection in a matter of form, which did not tend to the prejudice of the defendants; there was a concurrence, in the indictment, of more than the law requires.

"At all events, it is now too late to make the objection. The counsel for the defendants neglected to make it before the court of oyer and terminer; and it is too late to set up the objection after conviction and sentence. *People* v. *Griffin,* 2 Barb. 427. In *King* v. *Marsh,* 1 Neville & P. 187; 6 Ad. & E. 236; 6 Benn. & H. Lead. Cr. Cas. 317; it was held that, a grand jury ought not to consist of more than twenty-three persons. Where more than twenty-three persons are sworn and sit upon a grand jury, and a bill of indictment is found by them, to which the defendant pleads, and is tried, and found guilty, the court of kings bench will not, upon *motion,* quash the indictment. If more than twenty-three are sworn and sit upon the grand jury, the defendant, in an indictment found by them, may, if that fact appears upon the caption of the indictment, bring error in law. If it does not appear there, then he may bring error in fact. See also *People* v. *King,* 2 Cai. 98. The error complained of does not amount to making a nullity of the indictment; it, at most, is an irregularity, not capable now of avoiding the conviction."

It is true that there are other cases bearing on the question of the legality of the grand jury, but *Conkey* v. *People* (*supra*) appears to be the only Court of Appeals case directly in point and on all fours with the case in question. *People* v. *Herrmans* (69 Misc. 303) held a grand jury of only fifteen, instead of the requisite sixteen could not bring in a valid indictment; but this case was decided on motion at the Court of Oyer at the time of arraignment.

In the present case the question is first raised many years after trial, conviction and sentencing. On reason it appears that the indictment did not affect the trial per se. Can it now be said that the relator did not receive a fair trial because of an " irregularity " in the Grand Jury? Moreover, no challenges to the panel are now allowed except as provided in section 238 of the Code of Criminal Procedure. None was taken. None can be taken now. (*People* v. *Nugent*, 57 App. Div. 542; *Conkey* v. *People, supra.*)

While not directly in point the case of *People* v. *Petrea* (92 N. Y. 128, 143–144) is worthy of high consideration in resolving the issue. There objection was made to the Grand Jury. It was claimed that the law under which the grand jurors were drawn was unconstitutional. The court said: " We are of the opinion that no constitutional right of the defendant was invaded by holding him to answer to the indictment. The grand jury, although not selected in pursuance of a valid law, were selected under color of law and semblance of legal authority. The defendant, in fact, enjoyed all the protection which he would have had if the jurors had been selected and drawn pursuant to the general statutes. Nothing could well be more unsubstantial than the alleged right asserted by the defendant under the circumstances of the case. He was entitled to have an indictment found by a grand jury before being put to trial. An indictment was found by a body, drawn, summoned and sworn as a grand jury, before a competent court and composed of good and lawful men. This we think fulfilled the constitutional guaranty. The jury which found the indictment was a *de facto* jury selected and organized under the forms of law. The defect in its constitution, owing to the invalidity of the law of 1881, affected no substantial right of the defendant. We confine our decision upon this point to the case presented by this record, and hold that an indictment found by a jury of good and lawful men selected and drawn as a grand jury under color of law, and recognized by the court and sworn as a grand jury, is a good indictment by a grand jury within the sense of the Constitution, although the law under which the selection was made, is void."

Hence a *de facto* grand jury while not a " legal " grand jury was held capable of indicting.

Perhaps it could be successfully argued in our highest court and in spite of the prevailing decision in point, that the presence of the twenty-fourth " grand juror " was not a complete compliance with the statutory mandate. At the same time it might be shown to be an invalid invasion of constitutional rights, for " no legislative enactment can be permitted to deprive the citizen of any of his constitutional rights ". (*People* v. *Glen*, 173 N. Y. 395, 400.) Yet it appears to this court that no constitutional question is now presented. Had a timely motion been made and denied it might well be that then there would have been a constitutional issue. But jurisdiction of the Court of Oyer was obtained when the indictment was returned without objection. Under the prevailing authority in point it would appear that even though a motion to dismiss had been duly made, it would have been denied.

Yet the court is well aware of the seriousness of the issue. Also it is admitted that it is not easily and fairly to be resolved. But more is before the court.

Strong affidavits convincingly show that the twenty-fourth juror was excused after one day of service, and he was not present during any of the time when the relator was indicted. Mr. C. J. Hoyt, the present District Attorney of Orange County, wherein the Grand Jury in question was sitting, swears that while no record was kept of the grand jurors who were present and deliberated, the records do show the filing of the indictment on June 8, 1935, and the records show the presence of the twenty-fourth grand juror at the opening of the term on May 6, 1935. Mr. W. R. Dally, the duly elected Treasurer of Orange County, swears that the records show that one R. B. Minerley, one of the grand jurors, was compensated for only one day's attendance; that the records do not indicate the date of attendance for which payment was made; the draft by which Robert B. Minerley was paid for his services was paid by the Columbus Trust Co., Newburgh, New York, on May 20, 1935, and was in the amount of $3.50, and the records show no other payment to R. B. Minerley for service with the May, 1935 Term, Grand Jury. Mr. R. B. Minerley himself, the grand juror in question, swears that he was duly excused by the presiding justice of the May, 1935 Term, Grand Jury and although he was sworn in and attended the session on May 6, 1935, he was excused from all further sessions and did not again attend any meetings of the May, 1935, Grand Jury.

Hence it affirmatively appears that twenty-three " good and lawful men " deliberated on the indictment. It was therefore a legal Grand Jury and the writ granted to the relator under both the law and the facts must be dismissed and the relator remanded to custody.

Ordered accordingly.